No. 9134.

## N. KING KNOX VS. THE CITY OF BATON ROUGE.

It is essential to the validity of bonds issued by a municipal corporation, that the ordinance creating the debt represented by them, should provide the means for paying the principal and interest of the same.

Nor is this requirement met by the fact that the bonds were issued in lieu of a cash subscription for stock in a railroad, which subscription was to be paid by means of a special tax. The provision for the payment of the stock was not available for that of the bonds.

Nor does the consent of the qualified voters, of the town or city, to the issuing of the bonds dispense with this requirement, where the ordinance. under which they issued, defective with respect to the requirement, was never submitted to the voters for ratification.

APPEAL from the Seventeenth District Court, Parish of East Baton Rouge. *Sherburn*, J.

*David N. Barrow* and *W. F. & D. C. Mellen* for Plaintiff and Appellant.

*E. H. Farrar* and *J. R. Beckwith* for Defendant and Appellee.

The opinion of the Court was delivered by

TODD, J. This is a suit on eight bonds of the city of Baton Rouge, issued on the 1st of November, 1858, payable in twenty years from date, aggregating $9500, with interest.

On the 3d of August, 1857, an ordinance was passed providing for the subscription, by the city of Baton Rouge, of fifty thousand dollars in the stock of the Baton Rouge, Grosse Tête and Opelousas Railroad Company, payable in five current instalments of $10,000 each, to meet which, a tax on the landed estate within the city was levied and each tax-payer, in payment of the tax, became entitled to an equivalent amount of said stock. This ordinance was ratified by a vote of the tax-payers. It was passed under the provision of an Act of the Legislature, No. 175 of 1852, providing for the subscription by municipal corporations to the stock of corporations undertaking works of internal improvements.

Before the first instalment of this subscription became due, on the 5th of March, 1858, the Legislature passed an act authorizing "the mayor and board of selectmen of the city of Baton Rouge to issue their bonds for fifty thousand dollars, payable in twenty years, bearing six per cent interest, in lieu of the subscription of the same amount, payable in five years, voted by the tax-payers of the city of Baton Rouge in favor of the said railroad company."

The question of issuing the bonds authorized by this act was submitted to a vote of the qualified voters, who voted in favor of it, and, thereupon, an ordinance was passed by the municipal authorities directing the bonds to be issued, which was accordingly done.

There was judgment in the lower court in favor of the defendant and the plaintiff has appealed.

The main defense relied on by the city, is, that the evidence in question, under which the debt was created and the bonds issued, did not provide means for paying the principal and interest of the debt, as required by Act of 1853—now constituting sections 2448, 2449 and 2450 of the Revised Statutes.

It is manifest that, if the bonds in question are subject to the operation of the act referred to, this defense must prevail, as in the ordinance under which the bonds were issued, no provision is made for the payment of either their principal or interest.

Nor does the act under which the ordinance was passed prescribe any mode for the payment of the bonds, and in such case it has been settled by frequent adjudications of this Court, that the Act of 1853 becomes operative, and where its requirements are not complied with the bonds are void. Benham vs. Carroll Parish, 28 A. 343; Smith vs. Madison, 30 A. 461; Young vs. Police Jury, 32 A. 392.

It is, however, contended that for similar reasons these bonds are not affected by the Act of 1853.

I.

The first is that the ordinance under which they issued did not create the debt against the corporation represented by the bonds, but that the debt already existed at the date of the bonds and was created by the ordinance of August, 1857, providing for subscription of $50,000 in the stock of the Baton Rouge, Grosse Tête and Opelousas Railroad, and that this ordinance and the Act of 1852 authorizing it made special and adequate provision for the payment of the debt.

A critical examination of the ordinance and legislative acts referred to, satisfies us that the debt purporting to be evidenced by the bonds in suit is not the same debt created under the ordinance of 1857.

As stated, the object of that ordinance was to authorize the subscription of stock in the railroad mentioned. The sum subscribed, as stated, was $50,000, payable in equal instalments. The instalments were to be paid by means of a tax on the "landed property" within the limits of the city. One section of the ordinance contained the following provision.

"*Be it further ordained, etc.,* That separate receipts for said tax shall be given to the tax-payers, which shall entitle them to an equivalent amount in the stock of the railroad company, and whenever the amount of the tax receipts shall not correspond exactly with the amount of a

share or any number of shares in the railroad company, it shall be lawful for the holder of the receipts to complete the fraction to an amount equivalent to a share, by payment, in cash, of the deficiency."

And the Act of 1852, under authority of which the ordinance was passed, provides as follows:

" SEC. 4. *Be it further enacted, etc.*, That if any subscription be made under the terms of this act, the stock so subscribed shall not belong to nor be administered by the parish or municipal corporation by which the subscription shall be made, but said stock shall belong to the tax-payers who shall have paid therefor; and the tax receipt of each tax-payer shall entitle him to a certificate transferable by delivery from the corporation to which subscription has been made, for an amount equal to the amount of his tax paid; Provided, however, that said police jury or municipal corporation shall be empowered to require such bond and security, and in such sums from the sheriffs or collectors of said tax, as they may deem necessary."

It is evident, under these provisions, that the amount to be paid, for the stock in question, was not a debt proper against the corporation itself, binding on its property, or to be satisfied out of the taxes collected from all the tax-payers, but one to be paid by the landed proprietors voting to ratify the subscription; and that the stock was not to belong to the city but to become the property of these landed proprietors, who were alone authorized to administer it.

There were no bonds to be issued for the instalments, but they were payable in cash and without interest.

The Act of 1858 authorized the city to issue its bonds, due in twenty years, bearing six per cent interest, payable semi-annually, in lieu of the instalments for the stock subscription. The provision to meet the instalments by the levy of the special tax could certainly not be invoked to pay the principal and interest of the bonds, for, as stated, that was a special tax against the landed proprietors, whereas the bonds purport to be the debt of the city, to be satisfied out of its property and the general taxes. Besides, such provision was wholly inadequate for the bonds, inasmuch as the subscription amounted only to $50,000, and the bonds and accruing interest, till their maturity, to at least $110,000.

There was no authority whatever in the Act of 1858, nor in the ordinance under it, for utilizing or rendering available any security or means provided in the Act of 1852 and the ordinance of 1857, for the payment of the stock subscription authorized thereunder, but the Act

of 1858 simply authorized the issuing of the bonds in lieu of the instalments for the stock, and by its terms made the bonds the debt of the corporation.

There is nothing, therefore, in this view of the subject that relieves the bonds from the operation of the Act of 1853.

## II.

Next, it is urged that authority for the issuing of the bonds and proper provision for their payment may be found in an act approved March 20, 1856, entitled "An Act granting the city of Baton Rouge power to issue bonds for fifty thousand dollars."

We see no connection whatever between this act and that of 1858 and the ordinance under the latter act.

The Act of 1856 contained no authority to issue bonds in aid of the railroad in question, nor for any other work of internal improvement, but provided only for bonds to the amount of $50,000, to be issued and sold for corporate purposes or for the use of the corporation, and by its very terms limited them to such purposes or use. This act cannot, therefore, by the most strained construction, have the slightest bearing on the bonds in question.

## III.

Lastly, it is contended by plaintiff's counsel that the inhibition contained in the Act of 1853 is directed alone against *"the constituted authorities of incorporated towns and cities,"* and other municipal corporations; and that, inasmuch as the issuing of the bonds was ratified by a majority of the voters in the city of Baton Rouge, the debt was not created by the constituted authorities of the city, but was the act of the corporation or its members, and that the inhibition in question would not in such case apply.

Whatever force, if any, there may be in this proposition, it is not now before us for consideration, for in point of fact there never was any ratification by the qualified voters of Baton Rouge of the bonds as they were issued, that is without provision made for their payment.

The corporate authorities, before passing the ordinance directing the issuing of the bonds, submitted to the voters the question, " Whether or not, under the act, the bonds of the city shall be issued to said company," etc. And after that question had been decided affirmatively by an election, they proceeded to pass the ordinance under which the bonds were issued, but which ordinance was never submitted to the people for approval. The people or voters, therefore, even could they

have done so, never waived the requirement of law imposing on their agents the duty of providing in the ordinance creating the debt the means of its payment.

*Non constat* that if the ordinance as passed, defective in this respect, had been submitted to the voters, it would have been approved by them. The power, therefore, to contract the debt passed, under the enabling Act of 1858, to the constituted authorities of Baton Rouge, subject to the requirement of the Act of 1853, referred to.

For these reasons, we conclude that the bonds were issued without observing this essential condition to their validity and are, therefore, void.

If void on account of this radical defect, it is useless to discuss the proposition, or cite authorities to sustain it, that the bonds could acquire no validity by reason of their subsequent assignment to a third person for value.

The judgment of the lower court is, therefore, affirmed, with costs.

---

### On Application for Rehearing.

There is no inconsistency between the doctrine of the original opinion in this case and that of United States vs. New Orleans, 8 Otto, 396. The reasons in the latter case for holding that the act of the Legislature there involved was independent of the provision of the Act of 1853, requiring cities and towns, in creating debts, to provide in the same ordinance the means of payment, were special and do not apply to the enabling act here involved.

Fenner, J. We have carefully examined this application, without finding occasion to change any of the views expressed in our original opinion. The only point requiring comment is the suggested inconsistency between our opinion as to the operation and effect of the Act of 1853 and that expressed by the Supreme Court of the United States in the case of United States vs. New Orleans, 8 Otto, 396. If this inconsistency were real, it would give us serious pause, because of our desire to preserve all possible harmony with the jurisprudence of that high tribunal. But there is no such inconsistency. We freely concede that the statute referred to was not a limitation upon the power of the Legislature to authorize the municipal authorities to create debts without provision in the ordinance of the means of payment. The question is, whether the enabling act here presented *did* confer such authority.

In the case above mentioned, the Supreme Court of the United States found that the enabling act there involved conferred the authority, for the reason assigned by the Court "that the Act of 1854 prescribed the details of the ordinance which should be passed by the city in the exe-

cution of the authority conferred, and that the ordinance passed conformed to them."

A reference to the Act of 1854 will show that it provided in terms that "the ordinance authorizing such subscription shall contain the following provisions, to wit:"—going into a minute detail of the required provisions, including some as to the means for paying the interest of the debt contracted. The Court had powerful reason for holding that an ordinance conforming to all the requirements of the act was a valid exercise of the authority conferred, which was special and independent of the general statute of 1853. But the enabling act involved in the instant case presents no such features and falls within the doctrine announced by us in the case of Oubre vs. Donaldsonville, 33 A. 386, to which we referred in our original opinion and to which we adhere.

Rehearing refused.