NATIONAL LIFE INS. CO. OF MONTPELIER v. BOARD OF EDUCATION OF CITY OF HURON.

(Circuit Court of Appeals, Eighth Circuit.    July 16, 1894.)

No. 402.

1. RECITALS IN MUNICIPAL BONDS—ESTOPPEL.

Where a municipal body has lawful authority to issue bonds or negotiable securities, dependent only upon the adoption of certain preliminary proceedings, and the adoption of those preliminary proceedings is certified on the face of the bonds by the body to which the law intrusts the power, and upon which it imposes the duty, to ascertain, determine, and certify this fact before or at the time of the issuing of the bonds, such a certificate will estop the municipality, as against a bona fide purchaser of the bonds, from proving its falsity in order to defeat them.

2. ESTOPPEL—RECITAL OF PERFORMANCE OF CONSTITUTIONAL REQUIREMENT.

Such an estoppel may arise, in a proper case, upon a recital that an act required by a constitution has been performed, as well as upon a recital of the performance of an act required by statute.

3. ESTOPPEL—RECITALS.

Recitals in municipal bonds may constitute an estoppel in favor of a bona fide purchaser, even where the body that issued the bonds had no power to issue them, and could not, by any act of its own or of its constituent body, make a lawful issue of the bonds, if the fact of this want of power does not appear from the bonds the purchaser buys, the constitution and statutes under which they are issued, nor the public records referred to therein.

4. RECITALS—ESTOPPEL.

But recitals in municipal bonds, by the representative body that issues them, to the effect that all the requirements of the laws with reference to their issue have been complied with, will not estop the municipality from proving, as against a bona fide purchaser, that the representative body had no power to issue them where no act of the representative or constituent body could make the issue lawful at the time it was made, and this fact appears from the constitution and statute under which the bonds are issued, the public records referred to therein, and the bonds the purchaser buys.

5. MUNICIPAL CORPORATIONS—BONDS—ESTOPPEL BY RECITALS.

A board of education, authorized to issue bonds, issued them without complying with a constitutional requirement (Const. S. D. art. 13, § 5) that, at or before the time of incurring such indebtedness, provision should be made for the collection of an annual tax to pay interest and principal, although the board had full power to make such provision, but the bonds recited "that all conditions and things required to be done precedent to and in the issuing of said bonds have duly happened and been performed in regular and due form as required by law." *Held,* that the noncompliance with such requirement was not available to the board as a defense against bona fide purchasers of the bonds.

**6. MUNICIPAL CORPORATIONS—BONDS—BONA FIDE PURCHASERS.**

A city board of education, authorized to issue bonds for certain purposes, and to sell them for not less than 98 cents on the dollar, issued bonds purporting to be for such purposes, but in fact for an unauthorized purpose, accepted a bid from S. therefor at par, delivered them to him, received part of the price, and transferred its right to the balance to the city, receiving a city warrant for the amount. S. sold the bonds for 97½ cents on the dollar. *Held,* that this constituted an executed sale of the bonds to S. at par, and purchasers from him, who were strangers to his purchase from the board, were not chargeable with notice of the invalidity of the bonds, because they supposed they were buying from the board.

**7. SAME—RIGHTS OF BONA FIDE PURCHASERS — APPLICATION OF PROCEEDS OF BONDS.**

As against innocent purchasers for value, before maturity, of bonds issued by a city board of education, it is no defense that the board loaned nearly the entire proceeds of their sale to the city, for city warrants that were never paid, and that cannot be legally enforced.

**8. SAME—PURPOSE OF ISSUE OF BONDS.**

Neither is it a defense to such bonds, as against bona fide purchasers thereof, that the citizens and officers of the municipal corporation, with intention to use the proceeds of the bonds for an unlawful purpose, took the necessary steps to issue them for a lawful purpose, certified on the face of them that they were issued for such lawful purpose, and then appropriated the proceeds to an unlawful purpose.

**9. STATUTES—ADOPTION OF ACT BY MUNICIPALITY.**

The adoption, by a vote of the electors of a city, at an election duly called in accordance with the provisions of the city charter, of an act relating to schools pursuant to the provisions of that act, is not void because a resolution of the city council calling the election, which was not required by any provision of the statute or the charter, never took effect, because it was not legally published.

**10. SCHOOL DISTRICTS —ELECTION OF OFFICERS.**

Under an act relating to schools, allowing adoption of its provisions at any time by organized cities, and also by towns or villages not organized, and making provision for an immediate election of school officers in such unorganized territory, but not in an organized city, such officers may be chosen, in an organized city adopting the act, at a special election called in compliance with the requirements of the city charter.

**11. SAME—DE FACTO. CORPORATION—BONDS.**

Where a de facto board of education, exercising all the powers and functions of such a corporation legally organized, is recognized, and its action acquiesced in, by the state and the citizens, bonds issued by it, within the powers granted to a board legally organized, are binding in the hands of bona fide purchasers.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District of South Dakota.

The National Life Insurance Company of Montpelier, Vt., the plaintiff in error, brought an action in the court below against the board of education of the city of Huron, S. D., the defendant in error, upon 300 coupons cut from 120 bonds of the defendant, issued October 4, 1890. At the close of the evidence the court instructed the jury to return a verdict for the defendant, and, upon that verdict, rendered judgment in its favor. This writ of error is sued out to reverse this judgment.

The following is a copy of one of the bonds from which these coupons were cut:

"Issued in accordance with the provisions of sections 1830, 1831, and 1832 of the Compiled Laws of 1887, of Dakota territory, and in force in the state

of South Dakota, authorizing boards of education to issue bonds to raise funds to purchase school sites, erect school buildings, or to fund bonded indebtedness.

"No. 1.                    United States of America.                    $500.00.

"The State of South Dakota, Board of Education, City of Huron.

"The board of education of the city of Huron, county of Beadle, state of South Dakota, fifteen years after the date hereof, for value received, promises to pay bearer five hundred dollars, lawful money of the United States, at the office of the Chase National Bank, New York City, with interest thereon at the rate of six per cent. per annum, payable semiannually according to the tenor and effect of the annexed coupons. This bond is one of a series of bonds of like date, tenor, and effect, amounting in the aggregate to sixty thousand dollars, and numbered from one to one hundred and twenty, inclusive, issued to raise funds for the purchase of a school site, and for the erection of a school building thereon. And it is hereby certified and recited that all acts, conditions, and things required to be done, precedent to and in the issuing of said bonds, have duly happened and been performed in regular and due form as required by law, and that the total amount of this issue of bonds, together with all other outstanding indebtedness of said board of education, does not exceed the statutory or constitutional limitation, and that this bond has been duly registered by the clerk of the board of education in a book provided for that purpose, as required by law.

"In testimony whereof, the board of education of the city of Huron, in the county of Beadle, state of South Dakota, has caused this bond to be signed by its president, attested by its clerk, and countersigned by [Seal] its treasurer, and the seal of said board of education to be hereunto affixed, at the city of Huron, this 4th day of October, A. D. 1890.

"[Signed]                                     F. F. Smith, President.
"[Countersigned]                              J. C. Klemme, Treasurer.
"Attest: John Westdahl, Clerk."

In August, 1890, the city of Huron was a municipal corporation organized under a special act. Its board of education then consisted of two members from each of the four wards of the city, and, under its act of incorporation, one-half of these members would hold office until the first Tuesday of May, 1891, and one-half until the first Tuesday of May, 1892. Article 3 of chapter 17 of the Compiled Laws of Dakota Territory, which were then in force in South Dakota, relating to schools in cities, towns, and villages, provided as follows:

"Sec. 1808. All cities hereafter organized under the general act to provide for the incorporation of cities shall be governed by the provisions of this act; provided, that any city, town or village now organized under a general or special act, either for civil government or educational purposes, may at any time adopt the provisions of this act by a majority vote of the electors; provided further, that any town or village having a population of two hundred and fifty inhabitants or over within a radius of one mile from the center, and not organized for civil government nor under an independent school district act, may adopt the provisions of this act. In such case the county superintendent shall, upon petition of a majority of the legal voters within the proposed district, call the first election thereof by posting notices in not less than three of the most public places within it; which notice shall contain a full description of the boundaries of said proposed districts besides the time and place of holding the election, and the names and number of offices to be filled." Comp. Laws Dak. 1887.

Section 1811 provided that the public schools of each organization effected in pursuance of this act shall be a body corporate and shall possess the usual powers of a corporation for public purposes by the name of "The Board of Education of the City, Town or Village (as the case may be) of ——— of the Territory of Dakota."

"Sec. 1814. When any city or town is divided into wards, at each annual election there shall be a board of education consisting of as many members from each ward as there are members of the council, who shall be elected by the qualified voters thereof, one of whom shall be elected annually, and

shall hold his office for the term of two years, and until his successor is elected and qualified. * * *"

Section 1824 provided that the board of education should annually levy a tax for the support of the schools of the corporation, to be approved by the city council.

Section 1825 provided that the taxable property of the whole corporation, including the territory attached for school purposes, should be subject to taxation.

Sections 1830–1833 read as follows:

"Sec. 1830. Whenever it shall be deemed necessary by the board of education, in order to raise sufficient funds for the purchase of a school site or sites, or to erect a suitable building or buildings thereon or to fund any bonded indebtedness, it shall be lawful for the board of education of every corporation coming under the provisions of this act to borrow money, for which they are hereby authorized and empowered to issue bonds bearing a rate of interest not exceeding seven per cent. per annum, payable annually or semi-annually, at such place as may be mentioned upon the face of said bonds, which bonds shall be payable in not more than twenty years from their date; and the board of education is hereby authorized and empowered to sell such bonds at not less than ninety-eight cents on the dollar; provided, that no bonds shall be issued until the question shall be submitted to the people, and a majority of the qualified electors who shall vote on the question at an election called for that purpose shall have declared by their votes in favor of issuing such bonds.

"Sec. 1831. It shall be the duty of the mayor of each city or town governed by this act, upon the request of the board of education, forthwith to call an election, to be conducted in all respects as are the elections for city or town officers in the same corporations, except that the returns shall be made to the board of education, for the purpose of taking the sense of such district upon the question of issuing said bonds, naming in the proclamation of such election the amount of bonds asked for and the purpose for which they are to be issued; provided, that where the corporation is not organized for civil government the board of education may call and conduct the election provided for in this section.

"Sec. 1832. The bonds, the issuance of which is provided for in the foregoing section, shall be signed by the president, attested by the clerk and countersigned by the treasurer of the board of education; the said bonds shall specify the rate of interest and the time when principal and interest shall be paid, and each bond so issued shall be for a sum not less than fifty dollars; but no corporation shall issue bonds in pursuance of this act in any sum greater than three per cent of its assessed valuation.

"Sec. 1833. The board of education at the time of its annual levy of taxes for the support of schools as hereinbefore provided, shall also levy a sufficient amount to pay the interest as the same accrues on all bonds issued under the provisions of this article, and also to create a sinking fund for the redemption of said bonds, which it shall levy and collect in addition to the rate per cent authorized by the provisions aforesaid for school purposes; and said amount of funds, when paid into the treasury, shall be and remain a specific fund for said purpose only, and shall not be appropriated in any other way except as hereinafter provided."

The charter of the city of Huron contained the following provisions:

"The clerk shall give at least ten days' notice of the time and place and object of every municipal election, whether general or special, by publishing the same in a newspaper published in said city or by posting notices thereof in three public places in each precinct." City Charter, § 4. "No ordinance, resolution or law of the city shall be passed, altered or amended or repealed by the city council, except by a vote of a majority of the entire council elect, to be taken by yeas and nays and entered on their records, nor take effect until the same shall have been published at least two successive weeks in some newspaper published in the city." Id. § 9

August 30, 1890, pursuant to a petition of citizens presented to the city council of Huron, that body passed a resolution calling a special election of the electors of that city on September 11, 1890, to determine whether or not

they would adopt the provisions of article 3, relating to schools in cities, towns, and villages, from which we have quoted. The city clerk gave the 10 days' notice of this election. It was held. The city council canvassed the votes, declared the proposition carried, and on September 11, 1890, passed a resolution adopting article 3, and calling a special election for the 22d day of September, 1890, for the purpose of choosing eight members of the board of education of the city of Huron, under the said article. September 22, 1890, the election was held, members of the board were elected, and it is stipulated that the members so elected, and their successors in office, continued to act as the board of education of the city of Huron, to carry on the schools, and to exercise all the functions of the board of education of that city, from September 22, 1890, until the month of April, 1892. September 22, 1890, the newly-elected board of education organized, and adopted a resolution declaring that it had become necessary, in order to raise sufficient funds for the purchase of a school site and to erect a suitable school building thereon, to borrow $60,000, and requesting the mayor of the city to call an election to see whether a majority of the qualified electors of the city would vote to authorize the board of education to issue bonds to the amount of $60,000 for that purpose. The city council also passed a resolution directing this special election to be called. The mayor called the election. It was held October 3, 1890. The returns were made to the board of education, canvassed, the majority declared to be in favor of the issue of the bonds, and on the same day a resolution was adopted by the board, directing their issue, signature, and authentication by the proper officers of the board. It is agreed that notices of these elections called and held on September 11, 1890, September 22, 1890, and October 3, 1890, were duly given in the form and manner required by law for elections held in the city of Huron.

On October 3, 1890, one D. L. Stick, the president of one of the banks of Huron, made a bid of par for the bonds; and the board passed a resolution that the bonds be delivered to him, and that he be directed and authorized to pay to the city of Huron the sum of $55,000 out of the sum paid for the bonds. The board subsequently passed a resolution to the effect that the sum of $55,000 derived from the sale of the bonds be temporarily loaned to the city of Huron upon the security of a city warrant delivered to the treasurer of the board of education for the said sum. Forty-five hundred dollars of the balance of this purchase price was subsequently loaned to the city in substantially the same way, and only $500 used for school purposes. The bonds were delivered to Mr. Stick, October 3, 1890. He, in company with the mayor of the city, carried them to the city of New York, and on October 17, 1890, sold them to the New England Loan & Trust Company and one Gilbough for 97½ cents on the dollar. There was some evidence tending to show that Gilbough supposed that they were buying direct from the board of education, and that the mayor telegraphed the board of education while the bonds were in process of negotiation in New York, because he did not feel like selling them at a price named without further authority; but there was no evidence that the New England Loan & Trust Company was aware of these facts, nor that the board of education ever claimed that any one was the purchaser from it, except Mr. Stick. The bonds numbered 1 to 60, inclusive, and all the coupons here in suit, except 60 which were cut from bonds numbered 61 to 120, inclusive, were sold by the trust company, for par or more, to, and paid for by, the plaintiff and the Dartmouth Savings Bank, respectively, before any of the coupons matured; and they purchased them without notice of the price at which the trust company had bought them, and without notice of any defects in or defenses to them. The remaining 60 coupons were cut from bonds numbered 61 to 120 by the New England Loan & Trust Company, and the bonds, with the remaining coupons, were then sold by them to a third party. All the coupons in suit were properly transferred to the plaintiff in error before this suit was commenced.

There was evidence tending to show that in the fall of 1890 the city of Huron was a candidate before the electors of South Dakota for permanent capital of that state, and that all the proceedings taken for the purpose of issuing and selling these bonds, ostensibly for buying a site and building a

schoolhouse, were really taken with the intent on the part of the citizens and officers of the city of Huron, and of the board of education, to use the money raised upon these bonds for the purpose of successfully carrying on the campaign of the city for the capital; that neither the treasurer of the board of education nor the treasurer of the city of Huron ever received any of the proceeds of the bonds, except $5,000; and that the warrants of the city of Huron, which were issued to the board for the temporary loan, were never paid, and were in fact void.   The evidence of one officer was that he did not know what became of the proceeds, but that 't was generally supposed that they were used to carry on the campaign of the city of Huron for the capital. But there was no evidence that the New England Loan & Trust Company, or Mr. Gilbough, or any of the subsequent purchasers of the bonds, ever knew of this purpose before they paid for the bonds, and there was evidence that they all supposed that the bonds were honestly issued for the purpose stated upon their face.

The constitution of the state of South Dakota provides that: "Any city, county, town, school district or any other subdivision incurring indebtedness shall at or before the time of so doing provide for the collection of an annual tax sufficient to pay the interest and also the principal thereof when due, and all laws and ordinances providing for the payment of the interest or principal of any debt shall be irrepealable until such debt is paid."   Const. S. D. art. 13, § 5.   The board of education did not, at or before the time of issuing or selling these bonds, provide for the collection of any such annual tax. The evidence of this fact, and all the evidence of the conspiracy to issue these bonds for a purpose other than that appearing upon their face, and all the evidence attacking the good faith of the eastern purchasers of the bonds, was received under the objections and exceptions of the plaintiff.

N. T. Guernsey (E. D. Samson, Wm. H. Baily, and Joe Kirby, on the brief), for plaintiff in error.

F. L. Boyce (Jesse W. Boyce and H. C. Hinckley, on the brief), for defendant in error.

Before CALDWELL and SANBORN, Circuit Judges, and THAYER, District Judge.

SANBORN, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

Before entering upon the discussion of any other question in this case, it is well to dispose of the contention that the holders of these bonds had notice of their invalidity before they paid for them.   This contention rests chiefly upon the proposition that the defendant was forbidden by the statute to sell the bonds for less than 98 cents on a dollar (section 1830, Comp. Laws Dak.), and that the New England Loan & Trust Company bought them October 17, 1890, for 97½ cents on a dollar.   The records of the board of education, however, disclose the facts that Mr. Stick, the president of one of the banks of Huron, bid 100 cents on a dollar for them, and that the defendant, the board of education, accepted that bid, and ordered the bonds delivered to him, October 3, 1890.   Under this order, evidenced by a resolution of the board, the bonds were delivered to him, and he accepted them.   This constituted a sale of the bonds at par.   It vested the title in Mr. Stick, and a perfect right of action for the $60,000 in the board of education.   If the board failed to enforce its right and to collect the purchase price, that cannot affect the sale, or the title to the bonds.   So far as Mr. Stick was concerned, however, it did collect the full purchase price.   Its treasurer received a credit of $5,000 from the sale of these bonds, in the First

National Bank of the city of Huron; and the board, by a resolution passed October 3, 1890, transferred its right of action for the other $55,000 to the city of Huron, directed Mr. Stick to pay that amount to the city, and subsequently received therefor a city warrant for $55,000. The records of the board of education themselves exhibit, not only a sale of these bonds to Mr. Stick, but a disposition by the board, not of the $58,500 paid to Mr. Stick by the trust company, but of the entire $60,000 bid by Mr. Stick for the bonds. The only testimony that tends in the least to throw suspicion on the truth of these records is that a Mr. Gilbough, who was a joint purchaser of the bonds with the trust company, October 17, 1890, testified that he supposed or understood that he was buying of the defendant; and the mayor of the city of Huron, who accompanied Mr. Stick to New York to assist in selling the bonds, testified that he telegraphed to the defendant about the price that was offered for them, because he did not feel like selling them at that price without further authority. But this is evidence of no material fact. The supposition, understanding, or feeling of strangers to the transaction between the board and Mr. Stick cannot be held to overthrow the executed sale which the records of the board, the admitted delivery of the bonds to Mr. Stick, and the appropriation of their proceeds by the defendant effected. A careful perusal of all the testimony has brought us to the settled conviction that there is no evidence in this record that would warrant either court or jury in finding that the records of this corporation do not here disclose the truth. Under this evidence, Mr. Stick must be considered the first purchaser of these bonds. The first sale was at par, and all purchasers subsequent to him were innocent purchasers for value, before maturity, or assignees of such purchasers, equally protected.

This conclusion disposes at the outset of two defenses that are urged against these bonds.

It is no defense to these bonds, against innocent purchasers for value, before maturity, that the defendant loaned $59,500 of the proceeds of the sale of them to the city of Huron for city warrants that were never paid, and that cannot be legally enforced, so that it has actually realized but $500 from the sale of its bonds. That a municipal corporation has given away or squandered the proceeds of negotiable securities which it placed upon the market cannot affect the rights of bona fide purchasers, who had no knowledge of, nor part in, the gift or waste. They are in no way responsible for the wise and economical use by the corporation of the funds it borrows. County Com'rs v. Beal, 113 U. S. 227, 240, 5 Sup. Ct. 433; Cairo v. Zane, 149 U. S. 122, 137, 13 Sup. Ct. 803; Maxcy v. Williamson Co., 72 Ill. 207.

Nor is it any defense to such bonds, as against bona fide purchasers, that the citizens and officers of a municipal corporation, with the intention to use the proceeds of the bonds for an unlawful purpose, took the necessary steps to issue them for a lawful purpose, certified on the face of the bonds that they were issued for such lawful purpose, and then appropriated the proceeds to the unlawful purpose. Corporations are as strongly bound to an adherence

to truth in their dealings with mankind as are individuals, and they cannot, by their representations or silence, induce others to part with their money or property, and then repudiate the obligations for which the money was expended, and which their statements represented to be valid. The defendant, in its resolutions and records, in all the resolutions and records of the city council of Huron, in the call for and vote at the election which authorized the issue of the bonds, and in the bonds themselves, declared that they were issued for a lawful purpose, viz. "to raise funds for the purchase of a school site, and for the erection of a school building thereon." The present holders purchased them and paid for them with no notice or knowledge that they were issued for any other purpose, and in the full belief that these declarations were true. It is no defense for this corporation, as against these bona fide purchasers, that during all this time it intended to use, and has since used, the money it raised from these bonds for the unlawful purpose of conducting a campaign for the state capital. It is no defense that it knew at the time it was taking these proceedings and making these declarations that they were false, and that during all this time it intended—First, to deprive itself of the school site and building; and, second, to deprive the purchasers of the bonds of the moneys they paid for them on the faith of its representations, and that it has accomplished the former purpose, and now seeks, with the aid of the courts, to accomplish the latter. Such a plea cannot be entertained in a court of justice. The corporation is estopped to deny that these bonds were issued to raise money for a school site and school building. Moran v. Commissioners, 2 Black, 722; Hackett v. Ottawa, 99 U. S. 86, 90; Ottawa v. National Bank, 105 U. S. 342, 345; Zabriskie v. Railroad Co., 23 How. 381; Omaha Bridge Cases, 10 U. S. App. 101, 189. 2 C. C. A. 174, 51 Fed. 309; Paxson v. Brown, 61 Fed. 874, and cases cited.

Another contention of counsel for the defendant is that article 3, c. 17, of the Compiled Laws of Dakota, under which the bonds were issued, was never legally adopted, and hence the bonds were void, and this, because the resolution of the city council of Huron passed August 30, 1890, calling the election for the adoption of this article, was required, by a positive provision of the city charter, to be published two weeks before it took effect, and the election was held September 11, 1890, and before it could have been so published. In support of this contention, they cite National Bank of Commerce v. Town of Granada, 4 C. C. A. 212, 54 Fed. 100. In that case the bonds were issued under section 4541 of Mills' Annotated Statutes of Colorado, which expressly provides that the city council or board of trustees shall call the election, and shall publish the notice of the election, to determine whether or not the bonds shall issue, and shall then issue the bonds if the vote is favorable. The board of trustees of the town of Granada passed an ordinance which in itself called the election, prescribed the notice, and authorized the mayor and clerk to issue the bonds if the vote was favorable. A general statute of the state provided that such an ordinance should be published, and that it should not take effect until five days after its

publication. The ordinance never was published, and this court held that it was never in force, and that the mayor and clerk never had any authority to issue the bonds; that it was a case of total want of authority on their part to act upon any conditions. McClure v. Township of Osgood, 94 U. S. 429, is a similar case of want of authority, because in that case the statute had not taken effect before the notice of election was given, so that there was no authority to give it. But these cases have no relevancy to the question presented here. In the Case of the Town of Granada the statute required the board of trustees to call the election, and to publish the notice of it. There is no such provision relative to the election for the adoption of article 3 in any of the statutes under which these bonds were issued. That article provides that any organized city may at any time adopt the provisions of the act by a majority vote of the electors. It is silent as to the person or body that shall call the election, and as to the notice of it. All those questions were left to the charter of the city. Article 3 imposed no duty on the city council,—required no act on its part before the election was held. Nor has our attention been called to any provision of the city charter of Huron that required any action on the part of the city council in order to legally call such an election. That charter does provide that the city clerk shall give at least 10 days' notice of the time and place and object of every municipal election, whether general or special; and this notice of the election of September 11, 1890, he gave in the manner prescribed by the charter. At that election the electors voted, the city council subsequently canvassed and declared the vote, and all parties treated it as a valid election until the time came to pay these coupons. In that election every requirement of the charter and of the statute was complied with, and in our opinion the election was valid, and article 3 was duly adopted. If the city council had passed no resolution calling the election, it would yet have been called and held in strict accordance with the charter, and the election cannot be invalidated by the fact that the city council passed a futile resolution that never took effect.

It is next urged that if article 3 was adopted at the election of September 11, 1890, the election of the members of the board of education September 22, 1890, was void, and there was no legal organization of the defendant corporation in that year, because article 3 makes provision for the election of members of the board at the annual elections of the city, which occur in March in each year, but makes no provision for their election at any other time. Section 1808, Comp. Laws Dak., provides that any city organized under the general law or under a special act may adopt the provisions of article 3 by a majority vote of its electors at any time. It also provides that any town or village not so organized, having 250 inhabitants within a radius of a mile, may adopt its provisions, and that in the latter case the county superintendent shall, upon a petition of a majority of the legal voters, call the first election by posting notices which shall state the time and place of holding the election, and the names and number of offices to be filled. Thus it

will be seen that the same section allows organized and unorganized inhabitants to adopt the provisions of the article at any time, and makes provision for an immediate election of officers by the inhabitants of the unorganized territory, and no provision for such an election in the organized city. It is hardly conceivable that it was the intention of the legislature to give to the sparsely inhabited parts of the state the benefits of this law earlier than to the cities. It is far more reasonable to suppose that the cause for the difference lies in the known fact that the charters of cities generally designate the officers whose duty it is to call, and the method of calling, general and special elections; and under these provisions the legislature well supposed that an election of the members of the board of education might be held immediately in the cities without special legislation, while such an election could not be so held in the unorganized territory. Strong support is lent to this view by the provision that any city may adopt this article "at any time," which is at least inconsistent with the position that the provisions of this article could never be put in force at any other time than at an annual election when only members of the board could be chosen. This is undoubtedly the view the officers and citizens of Huron took of this law when they issued these bonds, and until the coupons fell due. They held a special election of members of this board, under a notice that conformed strictly to the requirements of their charter, on September 22, 1890; and the members then elected immediately took charge of the schools and school property, and they and their successors discharged all the functions of the board of education of that city until April, 1892. In our opinion, their original view of this law and of their authority under it was correct, and the election of September 22, 1890, was authorized by it.

Moreover, in October, 1890, when these bonds were issued, this board of education was in any event a de facto corporation, exercising, under article 3, all the powers and functions granted to a corporation legally organized. It was recognized, and its action was acquiesced in, by the state and by the citizens, for at least 18 months; and, as against bona fide purchasers of its bonds, its acts, as a de facto board of education, if within the powers granted to a board legally organized under this law, are binding upon the defendant corporation. It is the province of the state to question, by proper judicial proceedings, its incorporation; not that of a defendant in a private suit, when it has asserted its corporate existence, and incurred liabilities to innocent parties on the faith of it. "When a municipal body has assumed, under color of authority, and exercised, for any considerable period of time, with the consent of the state, the powers of a public corporation, of a kind recognized by the organic law, neither the corporation nor any private party can, in private litigation, question the legality of its existence." Ashley v. Board, 8 C. C. A. 455, 60 Fed. 55, 63; County of Ralls v. Douglas, 105 U. S. 728, 730; Coler v. School Tp. (N. D.) 55 N. W. 587; Clement v. Everest, 29 Mich. 19; Burt v. Railroad Co., 31 Minn. 472, 18 N. W. 285, 289; State v. Carr, 5 N. H. 367; People v. Maynard, 15 Mich.

463; Fractional School Dist. No. 1 v. Joint Board of School Inspectors, 27 Mich. 3.

Finally it is insisted that the bonds are void because the defendant failed to comply with section 5, art. 13, of the constitution of South Dakota, which provides that any city, county, town, school district, or other subdivision, incurring indebtedness, shall, at or before the time of so doing, provide for the collection of an annual tax sufficient to pay the interest and also the principal thereof when due. Whether or not this provision of the constitution is self-executory, and whether it is mandatory or simply directory, are questions exhaustively discussed in the briefs, which we will not now stop to consider. Conceding, without deciding, that it is both self-executory and mandatory, the question arises whether or not the defendant's noncompliance with its provisions is an available defense against bona fide purchasers of these bonds, in view of the recitals they contain. Among other things, these bonds recite: "That all conditions and things required to be done, precedent to and in the issuing of said bonds, have duly happened and been performed in regular and due form as required by law." One of the conditions and things required to be done, precedent to and in the issuing of these bonds, was to provide, in accordance with this constitutional requirement, for the collection of the annual tax to pay the principal and interest of the bonds. The defendant certified on the face of these bonds that this thing had been done. On this certificate the present holders bought the bonds. Can the defendant now prove the falsity of this certificate to defeat them?

Our attention has not been called to any decision of the supreme court of South Dakota upon this question, and it is, in any event, a question of general commercial law, which the national courts must decide for themselves. If the decisions of the supreme court have settled the question, it will be unnecessary to consider those of the state courts, but we remark, in passing, that the cases of Wilson v. Shreveport, 29 La. Ann. 673, Knox v. City of Baton Rouge, 36 La. Ann. 427, and City of New Orleans v. Clark, 95 U. S. 644, which suggest that bonds may be void that are issued in violation of a constitutional provision which requires the provision for the collection of the annual tax to pay them to be contained in the act or ordinance which authorizes their issue, have no relevancy to the question before us. It is well settled that all purchasers must take notice of the existence and contents of the statute or ordinance under which the bonds declare that they are issued. If, as in National Bank of Commerce v. Town of Granada, supra, the ordinance recited in the bonds was never passed, or never took effect, the mayor and the clerk of the town, who signed the bonds, could not enact it into an ordinance by referring to it, and the purchasers must take notice that no act of theirs could give these agents the necessary authority to issue the bonds. If, as in Coffin v. Board, 6 C. C. A. 288, 57 Fed. 137, the statute recited in the bonds expressly prohibited their issue at the time they were issued, purchasers must take notice of that provision of the law; and recitals

in the bond to the effect that all requirements have been complied with will not relieve them of this notice, because no compliance or act of the county or its commissioners would enable them to make a lawful issue of the bonds at the time they were issued.

The distinction between these cases and that at bar is marked and manifest. An examination of the statutes or ordinances recited in the bonds in those cases disclosed the fact that it was not in the power of the representatives who issued them, by any act of theirs, to make a lawful issue of the bonds, and that if they had done every act and performed every condition in their power the bonds would still have been unauthorized. In the case at bar there was no lack of power in the board of education to make a lawful issue of bonds when those in suit were issued. Article 3, under which they were issued, provided that the taxable property of the whole corporation should be subject to taxation by them (section 1825, Comp. Laws Dak.), and that they should annually levy a sufficient amount to pay the interest on all bonds they issued under this article, and to create a sinking fund for the payment of the principal (section 1833, Id.) An ordinance or resolution of this board, passed at or before the issuance of the bonds, providing for the collection of such an annual tax until the bonds and coupons were paid, would have complied with the provision of the constitution. If this was not passed, it was not from lack of power in the board, but from a failure on its part to exercise the power with which it was vested in the manner provided by the constitution.

It is this difference between the inadequate exercise of ample power and the total absence of power to be exercised that widely separates this case from Dixon Co. v. Field, 111 U. S. 83, 4 Sup. Ct. 315; Northern Bank of Toledo v. Porter Tp. Trustees, 110 U. S. 608, 4 Sup. Ct. 254; McClure v. Township of Osgood, 94 U. S. 429; Lake Co. v. Graham, 130 U. S. 674, 9 Sup. Ct. 654; Nesbit v. Independent Dist., 144 U. S. 610, 617, 12 Sup. Ct. 746; Sutliff v. Commissioners, 147 U. S. 230, 235, 13 Sup. Ct. 318; and Hedges v. Dixon Co., 150 U. S. 182, 14 Sup. Ct. 71,—cited by counsel for defendant.

In Dixon Co. v. Field, supra, each bond disclosed upon its face that it was a part of an issue of $87,000. The constitution prohibited the county from issuing bonds to an amount in excess of 10 per cent. of its assessed valuation. Eighty-seven thousand dollars was more than 10 per cent. of that valuation, and the supreme court held that the recitals in the bond did not estop the county from showing these facts, because the purchaser was bound to take notice of the constitution and statute under which his bond was issued, the assessed valuation to which the constitution referred him, and the total amount of the issue of bonds disclosed on the face of each, and from these facts he must know that the county commissioners could not, by any act of theirs, lawfully issue the bonds.

In Sutliff v. Commissioners, supra, the constitution and the statute limited the power of the county commissioners to incur debts for the county to a certain percentage of the assessed valuation. They had incurred indebtedness in excess of that limitation before any of the bonds were issued. The statute required the county com-

missioners to publish and to make a public record of a true statement of the indebtedness of the county, semiannually; and the court held that purchasers of the bonds must take notice of the constitution, the statute, the assessed valuation, and the public record of the debt referred to in them, which together disclosed the entire absence of power in the commissioners to issue any bonds, and that no recitals in the bonds themselves would estop the county from proving these facts.

The other cases cited above rest upon the same principle. In each of them the bonds failed, not because the municipal representatives who issued them failed to exercise the power they had in the manner prescribed, but because they had no power to exercise, and the constitution, statutes, and public records referred to therein gave notice to the purchasers of this want of power. It is clear that these authorities do not rule the case before us. Nor do such cases as Marsh v. Fulton Co., 10 Wall. 676; Buchanan v. Litchfield, 102 U. S. 278; Lake Co. v. Rollins, 130 U. S. 662, 9 Sup. Ct. 651,—in which warrants or bonds that contained no recitals were declared void for want of compliance with some provisions of the law under which they were issued.

It is, however, insisted that there is something in a constitutional provision so sacred that no certificate of a compliance with its terms can estop the corporation that makes it from proving its falsity. The remark of Mr. Justice Jackson in Hedges v. Dixon Co., 150 U. S. 187, 14 Sup. Ct. 71, that, when municipal bonds are issued in violation of a constitutional provision, no estoppel can arise by reason of any recitals contained in the bonds, and his reference to Lake Co. v. Rollins, 130 U. S. 662, 9 Sup. Ct. 651; Lake Co. v. Graham, 130 U. S. 674, 9 Sup. Ct. 654; and Sutliff v. Commissioners, 147 U. S. 230, 13 Sup. Ct. 318,—are cited in support of this position. But there was no question of the effect of such recitals before the court in Hedges v. Dixon Co., and the remark was entirely unnecessary to the decision of the case. The bonds there in question had been adjudged void in Dixon Co. v. Field years before, and the question then before the court was whether, inasmuch as only a part of the issue was beyond the constitutional limit of indebtedness, a court of equity would scale down the amount, and permit a recovery for such a sum as was within the limit. When he made the remark the learned justice had in mind the bonds of Dixon county, and it was true that the recitals in those bonds, and in the bonds in the particular cases he cites, did not constitute estoppels, because the purchasers were charged with notice of the want of power of those who issued them, by the statutes and the records they referred to. The remark should undoubtedly be limited to the particular facts of those cases.

It is a general and salutary principle of the law that one who, by his acts or representations, or by his silence when he ought to speak out, intentionally or through culpable negligence, induces another to believe certain facts to exist, and the latter rightfully acts on such belief, so that he will be prejudiced if the former is permitted to deny their existence, is conclusively estopped to interpose

such denial. No reason occurs to us why a municipal body that has induced others to act to their prejudice by its certificate that it has performed an act that the laws intrusted to it to perform should be excepted from this rule, and permitted to deny its certificate, to the prejudice of those it has deceived, simply because the performance of the act was required by the constitution. This view is not novel.

In Buchanan v. Litchfield, 102 U. S. 278, 290, Mr. Justice Harlan intimated the opinion that, in a case where neither the constitution nor the statute prescribed any rule or test by which persons should ascertain the indebtedness of a corporation, a recital in the bonds that the requirements of the constitution were complied with might estop the corporation from denying it.

In Pana v. Bowler, 107 U. S. 529, 539, 2 Sup. Ct. 704, the supreme court upheld the estoppel of a recital in bonds, as against an alleged defect in the mode of conducting an election held prior to the adoption of the constitution of Illinois, when the bonds were issued after its adoption, in the face of a prohibition contained in that constitution against the issuing of any bonds unless their issue had been authorized under then existing laws by a vote of the people prior to the adoption of the constitution.

In Oregon v. Jennings, 119 U. S. 74, 7 Sup. Ct. 124, the supreme court held that recitals in bonds to the effect that a constitutional provision had been complied with estopped the town of Oregon to deny the statement. In delivering the opinion of the court, Mr. Justice Blatchford said:

"In respect to this compliance with the conditions imposed by the vote of the people, whether the question is to be regarded as arising under the provision of the constitution or that of a statute, it must equally be regarded as concluded by the recitals in the bonds made by the supervisor and town clerk."

And in Chaffee Co. v. Potter, 142 U. S. 355, 364, 12 Sup. Ct. 216, the supreme court held, in 1891, that the recital in the bonds that the total amount of the issue did not exceed the limit prescribed by the constitution of Colorado estopped the county, as against a bona fide holder, from proving the violation of this constitutional provision.

Upon reason and authority, therefore, our conclusion is that an estoppel may arise in a proper case upon a recital that an act has been performed which was required by a constitution, as well as upon the recital of the performance of an act required by statute.

From the decisions to which we have referred, we think the following rules are fairly deducible:

Recitals in municipal bonds, by the representative body that issues them, to the effect that all the requirements of the laws with reference to their issue have been complied with, will not estop the municipality from proving, as against a bona fide purchaser, that the representative body had no power to issue them, where no act of the representative or constituent body could make the issue lawful at the time it was made and this fact appears from the constitution and statute under which the bonds are issued, the public rec-

ords referred to therein, and the bonds the purchaser buys. Dixon Co. v. Field, supra, and cases cited thereunder.

Such a recital may constitute an estoppel in favor of a bona fide purchaser, even where the body that issued the bonds had no power to issue them, and could not, by any act of its own or of its constituent body, make a lawful issue of bonds, if that fact does not appear from the bonds the purchaser buys, the constitution and statutes under which they are issued, and the public records referred to therein. Chaffee Co. v. Potter, supra.

Another rule that is established by a long line of decisions of the supreme court is that:

Where the municipal body has lawful authority to issue bonds or negotiable securities, dependent only upon the adoption of certain preliminary proceedings, and the adoption of those preliminary proceedings is certified on the face of the bonds by the body to which the law intrusts the power, and upon which it imposes the duty, to ascertain, determine, and certify this fact before or at the time of issuing the bonds, such a certificate will estop the municipality, as against a bona fide purchaser of the bonds, from proving its falsity, to defeat them. Commissioners v. Aspinwall, 21 How. 539; Bissell v. City of Jeffersonville, 24 How. 287; Moran v. Commissioners, 2 Black, 722; Meyer v. City of Muscatine, 1 Wall. 384, 393; Lee Co. v. Rogers, 7 Wall. 181; Pendleton Co. v. Amy, 13 Wall. 297, 305; City of Lexington v. Butler, 14 Wall. 282; Grand Chute v. Winegar, 15 Wall. 355; Lynde v. Winnebago Co., 16 Wall. 6; Marcy v. Township of Oswego, 92 U. S. 637; Town of Colomo v. Eaves, Id. 484; County of Moultrie v. Rockingham Ten-Cent Sav. Bank, Id. 631; Commissioners v. Bolles, 94 U. S. 104; Commissioners v. Clark, Id. 278; Commissioners v. January, Id. 202; County of Warren v. Marcy, 97 U. S. 96; Pana v. Bowler, 107 U. S. 529, 2 Sup. Ct. 704; Oregon v. Jennings, 119 U. S. 74, 7 Sup. Ct. 124; Chaffee Co. v. Potter, 142 U. S. 355, 12 Sup. Ct. 216.

In Commissioners v. Aspinwall, supra, a favorable vote of the electors of a county at an election called by prescribed notices was a condition precedent to the lawful exercise by the county commissioners of the power to issue the bonds. The defense was that the requisite notices of the election had not been given, but the court held that the county was estopped to make that defense by a recital in the bonds that they were issued in pursuance of the statute.

In Pana v. Bowler, 107 U. S. 539, 2 Sup. Ct. 704, Mr. Justice Woods, who delivered the unanimous opinion of the supreme court, said:

"This court has again and again decided that if a municipal corporation has lawful power to issue bonds or other negotiable securities, dependent only upon the adoption of certain preliminary proceedings, such as a popular election of the constituent body, the holder in good faith has the right to assume that such preliminary proceedings have taken place, if the fact be certified on the face of the bonds by the authorities whose primary duty it is to ascertain it."

In Marcy v. Township of Oswego, 92 U. S. 637, the bonds recited the statutory prerequisite to the exercise of the authority to issue them,—that three-fifths of the electors of the town had voted in fa-

vor of their issue,—and the court held that the town was estopped to prove that less than three-fifths had so voted.

In Town of Colomo v. Eaves, 92 U. S. 284, 491, in which the defense was that the proper notice of the popular election that was a condition precedent to the lawful issue of the bonds had not been given, the court again held that the recital in the bonds estopped the town, and declared that the rule that "where legislative authority has been given to a municipality, or to its officers, to subscribe for stock of a railroad company, and to issue municipal bonds in payment, but only on some precedent condition, such as a popular vote favoring the subscription, and where it may be gathered from the legislative enactment that the officers of the municipality were invested with power to decide whether the condition precedent had been complied with, their recital that it has been, made in the bonds issued by them, and held by a bona fide purchaser, is conclusive of the fact, and binding upon the municipality, for the recital is itself a decision of the fact by the appointed tribunal," had become so firmly seated in reason and authority that it could not be shaken. It never has been shaken, but has been uniformly reaffirmed in the later cases we have cited.

In view of the rule these authorities establish and illustrate, there is no longer any difficulty in disposing of the question we have been considering. Full power to perform the condition precedent that was not fulfilled in the case before us, and to make a lawful issue of the bonds, was vested in this board of education. The constitution and statute intrusted to this board the power, and imposed upon it the duty, to ascertain and determine, before it issued the bonds, whether or not this condition had been performed. Neither the statute nor the constitution referred the purchaser to, or required any public record of the performance of this condition, before or at the time of the issue of the bonds, other than the act of the board in issuing them. The board not only had special means of knowledge regarding the performance of this condition, but it had absolute knowledge, for the board alone could perform the condition, and the purchaser had a right to assume that it knew and truthfully certified to what it had itself done. This board, by the act of issuing the bonds, decided that this and all other conditions precedent to their issue had been performed. It certified that fact on the face of the bonds it issued, and bona fide purchasers have bought them. The defendant corporation cannot now be heard to deny the truth of this certificate, to their prejudice. The case falls far within the rule adopted by the supreme court. That rule commends itself to our judgment as just and equitable, and the long line of decisions in that court, affirming it, has foreclosed all discussion of the rule itself in the national courts.

The judgment below must be reversed, and the cause remanded, with directions to grant a new trial, and it is so ordered.