SECOND WARD SAV. BANK OF MILWAUKEE v. CITY OF HURON

(Circuit Court, D. South Dakota. May 8, 1897.)

1. MUNICIPAL CORPORATIONS—BONA FIDE PURCHASERS.
　　In the absence of evidence to the contrary, a stipulation that a party "purchased" certain negotiable bonds is sufficient to show that he is a bona fide holder of them for value.

2. SAME—ESTOPPEL BY RECITALS.
　　As against a bona fide holder of its bonds, a municipal corporation is estopped, by recitals in such bonds of the purpose of their issue and that all the provisions of the act authorizing their issue were complied with, from asserting that they were not issued for such purpose or that the provisions of the act were not complied with.

3. SAME—REFUNDING BONDS.
　　It is no defense to an action on municipal bonds, issued to fund floating indebtedness, that the proceeds were used to take up warrants issued for illegal purposes.

**4. SAME.**

A municipal corporation empowered by its charter to borrow money by issuing bonds, for any legitimate municipal purpose, is thereby authorized to issue bonds to fund its floating indebtedness.

**5. SAME—EXCESSIVE INDEBTEDNESS—ESTOPPEL.**

A municipal corporation, for the purpose of selling its bonds, furnished to an intending purchaser a certificate, purporting to show the assessed valuation of its property and the amount of its indebtedness, being less than the legal limit. The bonds were taken and paid for, and the municipality paid several coupons. *Held* that, as against a bona fide purchaser, it was estopped to set up that, at the time of the issue of the bonds, it was indebted to an amount exceeding the legal limit.

Howard & Mallory, for plaintiff.
A. W. Wilmarth, for defendant.

CARLAND, District Judge.    The plaintiff brings this action to recover of the defendant the sum of $2,400, claimed to be due upon certain coupons, which are attached to certain bonds issued by the defendant on August 15, 1889. The bonds were 16 in number, for $500 each, and were in the following form:

"The United States of America, Territory of Dakota.

"$500.00.

"Bond of the City of Huron, Beadle County, Dakota Territory.

"The city of Huron, ten years after date, for value received, will pay to bearer the sum of five hundred dollars, at the American Exchange National Bank, New York, with interest thereon at the rate of six per cent. per annum, payable semiannually, according to the terms of the annexed coupons.

"Issued pursuant to an election held April 2, 1889, by authority granted by article 32 of section 7 of the charter of the city of Huron. Said charter approved by the legislative assembly of the territory of Dakota, March 8, 1883. Issued for the purpose of funding the floating indebtedness of the city of Huron.

"In testimony whereof the city of Huron, Beadle county, Dakota, has caused this bond to be signed by the mayor thereof, and countersigned by the city clerk of said city, and the seal of said city affixed this 15th day of August, 1889.    H. J. Rice, Mayor of the City of Huron.

"B. M. Rowley, City Clerk."

By stipulation in writing a jury was waived, and the action was tried to the court on April 27, 1897. The plaintiff at the trial relied upon the presumption that the holder of negotiable paper is presumed to have received the paper for value, in due course of business, without notice of any defects therein, and also upon the following stipulation filed in the case:

"It is stipulated hereby that the firm of Farson, Leach & Co., of Chicago, Illinois, purchased the bonds described in the complaint herein outright from the defendant, and that the plaintiff purchased said bonds outright from the said firm, and that said firm in no manner whatever acted as agents for said plaintiff in said matter.    Howard & Mallory, Plaintiff's Attorneys.

"Dated April 27th, 1897.    A. W. Wilmarth, Defendant's Attorney."

I quote this stipulation for the reason that it is the only evidence in the case that the plaintiff is a bona fide holder for value of the bonds and coupons involved in this action, providing the defendant has proved that the bonds originated in illegality or fraud, and thus has overcome the presumption arising from the possession of the bonds and coupons. The word "purchased," in the connection in

which it is used in the stipulation, imports that the plaintiff paid value for the bonds, and therefore, for the purposes of this case, the plaintiff will be held to be a bona fide holder for value, in due course of business, without notice of any defect in the bonds.

It now remains to be considered whether there are any defects in these bonds, shown by the evidence, which would defeat recovery, on the coupons attached thereto, by an innocent holder. The bonds contain this recital:

"Issued pursuant to an election held April 2, 1889, by authority granted by article 32 of section 7 of the charter of the city of Huron. Said charter approved by the legislative assembly of the territory of Dakota, March 8, 1883. Issued for the purpose of funding the floating indebtedness of the city of Huron."

Article 32 of section 7 of the charter referred to is in the following words:

"Powers of City Council.

"To borrow money, and for that purpose to issue the bonds of the city in such denominations for such length of time, not to exceed twenty years, and bearing such rate of interest, not to exceed 7% per annum, as the city council may deem best. Said bonds to express upon their face under what authority and for what purpose they are issued, and may have interest coupons attached: provided that no bonds shall be issued by the city council unless at an election after twenty days' notice in a newspaper published in the city, stating the purpose for which said bonds are to be issued, and the amount thereof, the legal voters of said city, by a majority, shall determine in favor of issuing said bonds: provided, further, that no bonds issued by the city council, under this act, shall be sold for less than par value."

As against this plaintiff, the defendant is estopped by the recital in the bond from denying that all the provisions of said article 32 were complied with. Evansville v. Dennett, 161 U. S. 434, 16 Sup. Ct. 613; Town of Coloma v. Eaves, 92 U. S. 484; Commissioners v. Bolles, 94 U. S. 104; Mercer Co. v. Hacket, 1 Wall. 83; Commissioners v. Beal, 113 U. S. 227, 238, 239, 5 Sup. Ct. 433; Cairo v. Zane, 149 U. S. 122, 13 Sup. Ct. 803; National Life Ins. Co. v. Board of Ed., 10 C. C. A. 637, 62 Fed. 783. It is also estopped, as against this plaintiff, from denying that the bonds were in fact issued for the purpose stated on their face. National Life Ins. Co. v. Board of Ed., 10 C. C. A. 637, 62 Fed. 783, and cases cited on page 645, 10 C. C. A., and page 785, 62 Fed.; Simonton, Mun. Bonds, p. 167. And it is no defense to these bonds, as against the plaintiff, that the proceeds thereof were used to take up and pay warrants issued for an illegal purpose. In National Life Ins. Co. v. Board of Ed., supra, it was said:

"That a municipal corporation has given away or squandered the proceeds of negotiable securities which it placed upon the market cannot affect the rights of bona fide purchasers who had no knowledge of or part in the gift or waste."

These propositions of law dispose of several of the matters urged against the validity of these bonds. It is further contended that the defendant had no power to fund its floating indebtedness, and that, the bonds having recited on their face that they were issued for such a purpose, the coupons are invalid in the hands of the plaintiff. The power to fund the floating indebtedness of the plaintiff, by issuing negotiable security, must be found, if at all, in the provision quoted herein from defendant's charter. Does the power to

borrow money, and issue negotiable securities for that purpose, give to the defendant the power to issue bonds to fund a floating debt? In Portland Sav. Bank v. City of Evansville, 25 Fed. 389, the court held that the words, "to borrow money for the use of the city," conferred the power to issue renewal bonds. The provision quoted from defendant's charter confers the power to borrow money by issuing bonds for any legitimate municipal purpose. Is not the borrowing of money to fund an existing indebtedness a legitimate municipal purpose? There seems to be but one answer to the question, and that is, that the general power to borrow money by issuing negotiable security necessarily carries with it the power to issue bonds to fund a floating debt. Simonton, Mun. Bonds, § 126. Sections 1149, 1150, Comp. Laws S. D., do not limit or restrict the power of the defendant conferred by its charter, as section 1150 states "that this act shall not be construed to limit or restrict the powers already conferred by any special charter upon the council of any city or municipal corporation." At the time these bonds were issued the defendant was a municipal corporation of the territory of Dakota, and as such was subject to section 4 of an act of congress approved July 30, 1886, which is in the following language:

"No political or municipal corporation, county or other subdivision, in any of the territories of the United States, shall ever become indebted in any manner or for any purpose to any amount in the aggregate, including existing indebtedness, exceeding four per centum on the value of the taxable property within such corporation, county, or subdivision, to be ascertained by the last assessment for territorial and county taxes, previous to the incurring of such indebtedness, and all bonds or obligations in excess of such amount, given by such corporation, shall be void."

The plaintiff, as a part of its case, introduced into evidence a certificate made by the clerk of defendant under its corporate seal, addressed to Farson, Leach & Co., and dated August 14, 1889, wherein the bonds involved in this action are offered for sale, and wherein it is stated to be true that the assessed valuation of the property in the city of Huron for the year 1889, liable to taxation, was $1,573,001, and that the total debt of defendant was: Water, $4,000; funding, $14,500. This certificate is addressed to the same firm which it is conceded purchased these bonds outright from the city of Huron, and from whom, it is conceded, the plaintiff purchased the same bonds outright. It was made for the purpose of selling these bonds. The evidence shows that the defendant received in cash, which went into its treasury and was used to pay off outstanding warrants, $8,140; that defendant has paid the first four coupons on each of these bonds; that at an election duly held, as recited in the bond, the constituent members of the defendant corporation decided to issue these bonds. Can the defendant now set up the fact that at the time the warrants were issued, which the proceeds of these bonds paid off, the defendant was indebted in an amount exceeding the limitation imposed by the law of congress? Has not the defendant, by its conduct and representations, estopped itself from now showing that the warrants which the proceeds of these bonds paid off were issued in excess of the statutory limit? Every

principle of right and justice would seem to require an answer in the affirmative.

The bonds in this case contain the recital that they were issued for the purpose of funding the floating indebtedness of the city of Huron. The bonds do not specify any particular floating indebtedness, and an innocent holder for value of these bonds would have no right to presume that the proceeds of the bonds were to be used in paying off illegal warrants, nor is it possible that the law is that the holders of these bonds were bound to know that the proceeds of the bonds were to be used in paying illegal warrants. The city council had the right to determine what indebtedness should be funded, and if, after getting the money arising from the sale of these bonds, it saw fit to apply it to the payment of warrants which were illegal, the plaintiff, as an innocent holder of these bonds, cannot have its rights depend merely upon the decision of the city council as to what debt it should pay off with the proceeds of the same. If this limitation contained in the act of congress shall be considered a constitutional limitation, still the courts hold that, even in that event, municipal corporations may be estopped by recitals. Chaffee Co. v. Potter, 142 U. S. 355, 12 Sup. Ct. 216; National Life Ins. Co. v. Board of Ed., supra.

The principle of law heretofore stated, to the effect that innocent holders of negotiable securities are in no wise responsible for the wise and economical use by the corporation of the fund it borrows, is also applicable, so long as there was nothing recited in the bonds showing the particular portion of the defendant's floating debt which was to be funded with the proceeds of plaintiff's bonds. In City of Cadillac v. Woonsocket Inst. for Savings, 7 C. C. A. 578, 58 Fed. 939, the circuit court of appeals for the Sixth circuit said:

"It seems to us that the representations made on the face of the bonds estops the city, as against a bona fide holder, from disputing the fact that these bonds were issued to take up old bonds falling due. Power was conferred by the act upon the common council to issue new bonds to take up bonds falling due. The question as to whether there are any such bonds is referred to the council. The old bonds, on the facts found by the circuit court, were at least 'colorable obligations.' The council determined to issue new bonds to take them up. It seems to us that, upon these circumstances, it did not devolve upon the purchaser of the new bond to look into the validity of the funded old bonds. * * * The defense it might have made against the old bonds it elected not to make. It should not now be permitted to make the same as against an innocent holder of the new bonds."