## WILSON v. BOARD OF EDUCATION OF CITY OF HURON.

1. Laws 1887, Chap. 47, declares that public school organizations shall each be a body corporate, with power to elect its own officers, and to contract and be contracted with, and exercise usual corporate powers, etc., but that the school-tax levy prepared by such board must be approved by the city council of the city in which the board is located, if located within a city. *Held*, that a board of education organized thereunder was a separate and distinct corporation from the city in which it was located, and hence the amount of the city's indebtedness could not be included in determining the amount of indebtedness the board was authorized to incur.

2. Under Laws 1887, Chap 47, limiting the indebtedness boards of education are permitted to incur to 3 per cent. of the assessed valuation of the property within the board's jurisdiction, the amount for which such boards are entitled to issue bonds must be determined on a basis of the last completed assessment, though taxes have not been levied thereon.

3. Comp. Laws, 1887, §§ 1149, 1150, providing that the limit of bonded indebtedness of a city or other municipal corporation shall be based on its assessed valuation for the year preceding the incurring of indebtedness, was not an amendment of Laws 1887, Chap. 47, authorizing boards of education to issue bonds to an amount not exceeding 3 per cent. of their assessed valuation, since the former applies only to cities or other municipal corporations having a common council or board of trustees.

4. A board of education authorized to issue bonds is estopped to allege that the money realized from their sale was misapplied, as a defense to an action thereon.

5. A board of education authorized to issue bonds cannot allege, as a defense thereto against a *bona .fide* purchaser, that it failed to comply with Const. Art. 13, § 5, requiring that, at or before incurring such indebtedness, provision should be made for the collection of an annual tax to pay the interest and principal, where the bonds contained a recital "that all conditions and things required to be done, precedent to and in the issue of said bonds, have duly happened and been performed as required by law."

6. Under Const. Art. 13, § 5, requiring school districts, at or before incurring indebtedness, to provide for the collection of a tax sufficient to pay the same when due, the failure of a board of education to comply with such provision does not relieve it from the obligation to thereafter provide for the payment of bonds issued in violation thereof.

HANEY, J., dissenting.

(Opinion filed February 27, 1900.)

Appeal from circuit court, Beadle county. Hon. A. W. CAMPBELL, Judge.

Action by Etherial Wilson against the board of education of the city of Huron, to recover upon certain funding bonds. Judgment for defendant, and plaintiff appeals. Reversed.

*W. A. Lynch*, for appellant.

The Board of Education of the City of Huron is a corporation distinct and separate from the city of Huron. It is not a

mere department of the city. Being a corporate entity separate and distinct from the city proper, it can incur a bonded indebtedness without reference to the indebtedness of the city. The indebtedness of the city of Huron and the indebtedness of the Board of Education of the city of Huron should not be included together in arriving at the constitutional limit of indebtedness of either. Comp. Laws, §§ 1808—1836.

The recital in the bonds "And it is hereby certified and recited that all acts, conditions and things required to be done precedent to and in the issue of said bonds have duly happened and been performed in regular and due form as required by law" estops and forecloses the defendant from urging as a defense to the bonds in suit, the failure of defendant to provide at or before the time of issuing the bonds for the collection of an annual tax sufficient to pay the principal and interest thereof, in accordance with the constitutional provision. Commissioners v. Aspinwall, 21 How. 539; Swinton on Mun. Bonds, §§ 194, 196; Commissioners v. Bolles, 94 U. S. 104; Citizens' Sav. & Loan Ass'n v. Perry Co., 156 U. S. 692; Oregon v. Jennings, 119 U. S. 75; Coler v. Dwight, 55 N. W. 587; Inhabitants v. Morrison, 133 U. S. 523; Bank v. Franklin Co., 128 U. S. 536; Buchanan v. Litchfield, 102 U. S. 278; Panana v. Boler, 107 U. S. 529; Chaffee Co. v. Potter, 142 U. S. 355; Mercer Co. v. Hackett, 1 Wall. 83; Gelpeck v. Dubuque, 1 Wall. 175 203; Rogers v. Burlington, 3 Wall. 354; Marshall Co. v. Schenck, 5 Wall. 772; Joseph Twp. v. Rogers, 16 Wall. 644; Moultrie v. Savings Bank, 92 U. S. 631; Town of Venice v. Murdock, 92 U. S. 494; Johnson Co. v. Thayer, 94 U. S. 631; Warran Co. v. Mercer, 97 U. S. 96; Walnut Twp. v. Wade, 103 U. S. 674· Moultrie Co. v. Fairfield, 105 U. S. 370; Northern Bank v. Por-

ter Twp., 110 U. S. 608; Smith v. Clark Co. 54 Mo. 58; Barrett Twp. v. Morrison, 133 U. S. 523; Shorter v. Rome, 52 Ga. 621; Nat'l Life Ins. Co. Montpelier v. Board of Education of Huron, 62 Fed. Rep. 778; Color v. Roda School Twp., 63 N. W. Rep. 158; Risley v. Village of Howell, 64 Fed. Rep. 455; Color v. Dwight School Tp , 3rd N. D.; Coffin v. Board of Comm'rs Kearney Co., 57 Fed. Rep. 137; Board of Comm'rs King Co. v. Cornell University, 57 Fed. Rep. 149; Board v. Randolph, 89 Vir. 614; Fulton v. Town of Riverton, 42 Minn. 395.

The bonds in suit reciting on their face that they were issued for a legal purpose concludes the defendant from setting up as a defense thereto that the purpose for which they were issued was in fact illegal. Swinton, Mun. Bonds, §§ 218, 220, 241; Hackett v. Ottawa, 99 U. S. 86; Ottawa v. Bank, 105 U. S. 343; Risby v. Village of Howell, 64 Fed. 453; Brewton v. Spira, 17 South. 660, Ahrdun v. Sikes, 59 Miss. 236.

*H. S. Mouser, Henry C. Hinckley* and *John L. Pyle,* for respondent.

The Board of Education of the city of Huron is a board or body possessing certain corporate powers, but exists simply as a department of the government of the city of Huron. The city of Huron was already indebted in excess of the constitutional limit at the time these bonds in suit were issued by the Board of Education, and being so indebted and the indebtedness a matter of public record, no power existed in the board to create any additional debt. Chap. 41, Laws 1881, Special Acts; Chap. 47, Laws 1887; Dillon, Mun. Corp., §§ 184, 58; Orvis v. Board, 56 N. W. 294; Richmond v. Powell, 27 S. W. 1; Wetman v. Oakland, 33 Pac. 769.

The recitals in the bonds in suit that the amounts of issue were within the debt limit and that all the things required by

law to be done had been done in the issuance of the bonds, and everything required by law as a condition precedent had been performed, could not estop the defendant to show that the debt limit had been in fact exceeded and that the constitutional requirement of the levy of a tax to pay the principal and interest of the bonds had not been fullfilled. An estoppel by recital cannot arise except upon matters of fact which the corporate officers had authority by law to determine and certify; it can never extend to or cover matters of law. Dixon Co. v Field, 111 U. S. 83; Town of Colona v. Eaves, 92 U. S. 484; Marcy v. Twp. of Oswego, 92 U. S. 637, Commissioners of Douglas Co. v. Bollves, 94 U. S. 104; Commissioners of Marion Co. v. Clark, 94 U. S. 278; County of Warren v. Marcy. 97 U. S. 96; Pana v. Bowler, 107 U. S. 529; Nesbit v. Ind. Dist. Riverside, 12 Sup. Ct. Rep. 746; Lake Co. v. Graham, 130 U. S. 674; Sutliff v. Com'rs, 13 Sup. Ct. Rep. 318; Hodges v. Dixon Co., 14 Sup. Ct. Rep. 71; Lake Co v. Rollins, 9 Sup. Ct. Rep. 651; Buchanan v. Lichfield; 102 U. S. 278; Chaffee Co. v. Potter, 12 Sup. Ct. Rep. 216; Dillon. Mun. Corp., § 291; Milsop v. City of Torrell, 60 Fed. 193; Brazoria Co. v Youngstown Bridge Co., 80 Fed. 10; Mercer Co. v. Provident Life & Trust Co., 77 Fed. 623; Bank v. Village. 26 N. Y. 2; Graves v. Saline Co., 16 Sup. Ct. Rep. 625; Bank v. Town of Granada, 54 Fed. 100; Coffin v. Board, 57 Fed. 137; Morrill v. Smith Co., 33 Pac. 399, Bruce v. Pittsburgh, 30 Atl. 831; City of Torrell v. Dissaint, 9 S. W. 593; Prickett v. City of Marceline, 65 Fed. 469; Blum v. Bowman, 66 Fed. 883; East St. Louis v. People, 124 Ill. 655; East St. Louis v. U. S., 120 U. S. 600; City of Palestine v. Royom, 40 S. W. 621; Dusibar v. Board, 49 Pac. 409; Holzhaur v. City of Newport, 22 S. W. 754; Comm'rs v. Zimmerman, 41 S. W.

428; Weaver v. San Francisco, 43 Pac. 972; Theiss v. Hunter, 45 Pac. 2; Abascall v. New Orleans. 19 So. 568; Kane v. Charleston, 43 N. E. 611; Creole Steam Fire Co. v. City of New Orleans, 3 So. 177; Johnson v. City of New Orleans, 15 So. 100; U. S. v. Thoman Comp.. 15 Sup. Ct. Rep. 378.

The Constitutional limit of indebtedness applicable to this case should be determined by computing five per centum upon the assessed valuation of the property therein as assessed in 1889, it being the year next preceding the time at which the indebtedness was incurred. Comp. Laws, § 1149, § 4, Art. 13, Const. S. D.; People v. May, 10 Pac. 641. Under this computation the issue of bonds in suit, added to the prior bonded indebtedness exceeded the constitutional limit. The bonds, showing on their face that they were issued at one time, as one series, and were taken as a whole, are void, Hedges v. Dixon Co., 14 Sup. Ct. Rep. 71.

CORSON, J. This is an action by the plaintiff to recover from the defendant the amount due upon a number of coupons detached from certain bonds of a series of 120 bonds, for $500 each, issued by the defendant, bearing date October 4, 1890, payable 15 years after date, and which are in the usual form. To each of these bonds were attached 30 coupons, for the payment of the interest semiannually, which are in the usual form. Each bond contained the following recital: "And it is hereby certified and recited that all acts, conditions, and things required to be done precedent to and in the issue of said bonds have duly happened and been performed in regular and due form as required by law, and that the total amount of this issue of bonds, together with all other outstanding indebted-

ness of said board of education, does not exceed the statutory or constitutional limitation." To the complaint on the part of the plaintiff, setting out a copy of the bond and coupon, and alleging that the plaintiff was the owner and holder of the same, the defendant, by its answer. set up four defenses: (1) That the defendant was not a corporation, and was a department of the city of Huron, and was therefore not authorized to issue bonds; (2) that the amount of bonds issued was in excess of the amount limited by law; (3) that the money received on the sale of said bonds was not used for the purposes specified upon the face of said bonds, but was paid over to the city of Huron to be expended for the purposes of a capital campaign; (4) that the defendant did not make provision before or at the time of issuing said bonds for the payment of an annual tax sufficient to pay the interest and principal of said bonds as the same became due, as required by the provisions of Article 13, § 5, of the constitution of this state. To this answer a demurrer was interposed on the part of the plaintiff on the ground that the answer did not state facts sufficient to constitute a defense to the action. This demurrer was overruled by the trial court, and, the plaintiff electing to stand upon his demurrer, judgment was rendered in favor of the defendant, and from that judgment the plaintiff appeals to this court.

It was alleged in the answer of the defendant that it was organized under and by virtue of Chapter 47 of the Session Laws of 1887, being Sections 1808 to 1839 of the Compiled Laws. By Section 1811, Comp Laws, it is declared that each public school organization effected in pursuance of the act should be a "body corporate," and should possess the usual powers of a corporation for public pur-

poses, and be capable of contracting and being contracted
with, and of holding and conveying such real and per-
sonal estate as might come into its possession by will or other-
wise, or as is authorized to be purchased by the provisions of
the act. It is also provided by said act that the respective
boards of education might require the city or town in which
they were organized to convey to them all school property
within the limits of such city or town. The act also provides
for the election of members of the board; that such board may
elect its own offiers, except the treasurer, who is elected in the
same manner as members of the board, and to make its own rules
and regulations. The only direct connection that said board
seems to have with the city is that by which it is provided that
its tax levy is required to be approved by the council of the city
to which the board appertains, when there is one. Without call-
ing attention to all of the various sections of the act, it is suffic-
ient to say that in our opinion it was the evident intention of
the legislature to make the boards of education, in the cities
therein designated, separate and independent corporations. This
view leads to the conclusion that the amount of indebtedness
of the city of Huron cannot be included in the amount of indebt
edness the defendant corporation was authorized to incur. It
is not necessary, therefore, to take into consideration the in-
debtedness of the city of Huron, in determining the indebted-
ness the defendant was authorized to incur.

It is further alleged in the answer that the indebtedness of
the defendant prior to the issue of bonds now under considera-
tion was $32,000. That amount added to $60,000, the amount
of the bonds of said issue, makes a total of $92,000. It is
further alleged in the answer that the assessed valuation of the

property within the limits of the city of Huron, as eqalized for the year 1889, was $1,575,000, and for the year 1890 was $3,014,-764. The property within the limits of the defendant school district was at least co-extensive with that within the limits of the city of Huron, and it may be assumed that the value of the property within the limits of the said board of education was the same. It.is contended on the part of the respondent that the value of the property assessed in 1889 should be the amount taken into consideration in fixing the limit of indebtedness which the defendant could incur. But we are of the opinion that the value fixed in 1890 must be taken as the true value for the purpose of fixing that limit. Taking this view of the assessable value of the property as fixing the limitation of the indebtedness which the defendant could incur, it is clear that the indebtedness of the defendant did not exceed the amount of indebtedness it was authorized to incur. It is claimed on the part of the respondent that by Sections 1 and 2 of Chapter 16 of the Session Laws of 1887 (being Sections 1149 and 1150 of the Compiled Laws) the general law was amended by providing that the assessed valuation as shown by the returns of the assessor for the year next preceding the time at which said indebtedness should be incurred should be taken as the valuation upon which the amount of such indebtedness could be incurred. But it is clear from an examination of those sections that the amendment only applied to city or other municipal corporations having a common council or board of trustees, and is limited to such corporations only, and has no application to school boards organized under the provisions of the sections we have referred to. As the bonds in this case were issued in October, 1890, subsequent to the assessment and eqalization of

the property of the city of Huron for the year 1890, that valuation must be regarded as the true valuation in fixing the amount of indebtedness that the defendant might incur.

The third defense, that the money was not used for the purposes for which the indebtedness was declared to be incurred on the face of the bonds, cannot be considered as a defense to the action. The defendant, being authorized to issue bonds for the purpose declared on their face, is estopped from showing that the money was misapplied, and not used for the purposes for which the bonds were issued. It is declared in the bonds that they are "issued in accordance with the provisions of Sections 1830, 1831, and 1832 of the Compiled Laws of 1887 of Dakota Territory, and in force in the State of South Dakota, authorizing boards of education to issue bonds to raise funds to purchase school sites and erect school buildings, or to fund bonded indebtedness." It will be observed that the declared purpose for which the bonds were issued was in strict conformity with the provisions of Section 1830, Comp. Laws. The defenses we have been considering have been passed upon by the United States court of appeals for the eighth circuit, since this appeal was taken and the brief's in this case filed, in a case in which the board of education of the city of Huron, in the State of South Dakota, was plaintiff in error, and the National Life Insurance Company of Montpelier, Vt., was the defendant in error, and in two other cases in which said board of education was the plaintiff in error, wherein were involved a number of the bonds of the same series that are before us on this appeal; and that learned court reached the same conclusions to which this court has arrived in regard to the questions discussed. Board of Education of City of Huron v. National Life Insurance

Co., same board against Peaslee, assignee, and same board against Monadnock Sav Bank. 36 C. C. A. 278, 94 Fed. 324.

The fourth defense, namely, that the defendant did not make provision before or at the time of issuing said bonds for the payment of an annual tax sufficient to pay the interest and principal of said bonds as the same became due, as required by the provisions of Article 13, § 5. of the constitution of this state, will now be considered. Said section reads as follows: "Any city, county, town, school district or any other subdivision incurring indebtedness shall, at or before the time of so doing, provide for the collection of an annual tax sufficient to pay the interest and also the principal thereof when due, and all laws or ordinances providing for the payment of the interest or principal of any debt shall be irrepealable until such debt shall be paid." In the case of National Life Ins. Co. v. Board of Education of City of Huron, 10 C. C. A. 637, 62 Fed. 778, in which a portion of the bonds now under consideration were involved, the United States court of appeals for the eighth circuit held that the defendant was estopped from setting up this defense, by virtue of the recital contained in the bonds. In that case the court, after reviewing at length the authorities upon that question, says: "In view of the rule that these authorities establish and illustrate, there is no longer any difficulty in disposing of the question we have been considering. Full power to perform the conditions precedent that were not fulfilled in the case before us, and to make a lawful issue of bonds, was vested in the board of education. * * * This board, by the act of issuing the bonds, decided that this and all other conditions precedent to their issue had been performed. It certified that fact on the face of the bonds it issued, and

*bona fide* purchasers have bought them. The defendant corporation cannot now be heard to deny the truth of this certificate, to their prejudice. The case falls far within the rule adopted by the supreme court. This rule commends itself to our judgment as just and equitable, and the long line of decisions in that court affirming it has foreclosed all discussion of the rule itself in the national courts." We are inclined to adopt the views expressed by that court upon this subject. But, while arriving at the same result, we prefer to place our opinion upon another ground.

It will be observed that Article 13, § 5, of our constitution provides that "any city, * * . * school district or any other subdivision incurring indebtedness shall at or before the time of so doing provide for the collection of an annul tax sufficient to pay the interest and also the principal thereof when due." This provision is mandatory and self-executing. "It supplies a sufficient rule by means of which * * * the duty may be enforced." Cooley, Const. Lim. (5th Ed.) 100; City of East St. Louis v. People, 124 Ill. 655, 17 N. E 447. No supplement al legislation is necessary in order to make it effectual. Every debt legally authorized, therefore, thereafter incurred by any of the public corporations mentioned in the section, carries with it the obligation of the corporation to levy and collect the necessary taxes required for its payment. This section of our constitution is substantially a copy of a portion of Article 9, § 12, of the constitution of the State of Illinois, adopted in 1870. The portion of that section referred to reads as follows: "Any county, city. school district or other municipal corporation incurring any indebtedness as aforesaid shall, before or at the time of doing so, provide for the collection of a direct annual

tax sufficient to pay the interest on such debt as it falls due and also to pay and discharge the principal thereof within twenty years from the time of contracting the same." The supreme court of the United States, in East St. Louis v. Amy, 120 U. S. 600, 7 Sup. Ct. 739, 30 L. Ed. 798, in construing that portion of the section, uses the following language: "In this case the constitution limited the power of the legislature of Illinois in respect to the grant of authority to municipal corporations to incur debts, but it declared in express terms that, if a debt was incurred under such authority, the corporation should provide for its payment by the levy and collection of a direct annual tax sufficient for that purpose. Under this provision of the constitution, no municipal corporation could incur a debt without legislative authority, express or implied; but the grant of authority carried with it the constitutional obligation to levy and collect a sufficient annual tax to pay the interest as it matured, and the principal within twenty years. This provision for the tax was written by the constitution into every law passed thereafter by the legislature allowing a debt to be incurred, and, in our opinion, it took the place in existing laws of all provisions for taxation to pay debts thereafter incurred under old authority which were inconsistent with its requirements. It was made by the people a part of the fundamental law of the state that every debt incurred thereafter by a municipal corporation under the authority of law should carry with it the constitutional obligation of the municipality to levy and collect all the necessary taxes required for its payment." It may be remarked, in passing, that this view met the approval of the entire court. The supreme court of the State of Illinois also had the same section of the constitution

under consideration in City of East St. Louis v. People, *supra*. That learned court held that the provision of the constitution now under consideration was self-executing, and quoted from the opinion of, and fully approved the construction given that section by the supreme court of the United States. The failure, therefore, of the defendant to provide, before or at the time of issuing the bonds in controversy, for the collection of an annual tax sufficient to pay the interest and principal of the bonds so issued, did not and does not relieve the defendant from the obligation to make the provision provided for in the constitution. At the time the bonds were issued the constitution imposed upon the defendant the obligation to provide for the collection of a tax sufficient to pay the interest and principal when due, and it could not escape that obligation by the failure on its part to make the necessary provision. The constitutional provision we are considering confers no new power upon the corporation to contract debts, but only provides that, when the debt is incurred under the authority of law and a vote of the people, it carries with it the constitutional obligation. The form of the constitutional provision indicates that both the framers of the organic law, and the people who adopted it, intended that a corporation incurring an indebtedness authorized by law should at once assume the obligation to provide for its payment as therein specified. The provisions of our constitution are different from those of many of the states. The state constitution of Texas provides that "no debt shall ever be created by any city unless at the same time provision is made to assess and collect annually a sufficient sum to pay the interest thereon and create a sinking fund of at least two per cent." Article 11, § 5, Const. Tex. And again: "But no

debt for any purpose shall ever be incurred in any manner by any city or county unless provision is made at the time of creating the same for levying and collecting a sufficient tax to pay the interest thereon and provide at least two per cent. as a sinking fund." *Id.* § 7. In construing these sections the supreme court of Texas has held, in effect, that these provisions constitute a condition precedent to the creation of the debt, and that the corporation has no authority to create the debt unless this condition is complied with. Citizens' Bank v. City of Terrell, 14 S. W. 1003. This construction of the provisions of the constitution in that form is undoubtedly correct, but the cases decided under constitutions having those or similar provisions have no application to the provisions of our constitution, which are mandatory and self-executing. The defendant in this case failed to comply as it should have done with the mandate of the constitution, but its failure so to do does not have the effect to relieve it from its obligations, and constitutes no defense to an action upon its bonds issued under the authority of law. It is within the power of a court of competent jurisdiction to enforce the obligation, and compel the defendant to collect sufficient taxes to pay the interest and principal when due, regardless of the failure of the defendant to make the provision required by the constitution. City of East St. Louis v. Amy, *supra*; City of East St. Louis v. People, *supra*. In this view of the constitutional provisions, the failure of the defendant to perform the duty imposed upon it by the constitution constitutes no defense. Such a failure on the part of the corporation would, no doubt, detract from the salability of its bonds or other obligations, as the purchaser of such obligations might be required to resort to the courts to

enforce the constitutional obligation, but that cannot affect the legality of the bonds issued. The views herein expressed lead to the conclusion that the circuit court was clearly in error in overruling the demurrer of the plaintiff to the answer and entering judgment thereon. The judgment of the court below is reversed, and the circuit court is directed to vacate and set aside the order overruling the demurrer, and to enter an order sustaining the same.

HANEY, J. (dissenting). I concur in the conlusion that defendant is a public corporation, distinct from that of the city of Huron. The act providing for its creation expressly authorized the issuing of bonds for the purposes recited in the bonds in suit, upon a vote of the people, which the answer admits was had, and they seem in form, to meet all the requirements of the statute (Comp. Laws, §§ 1830-1832). But defendant alleges "that neither at the time of the issuance of the bonds mentioned and described in plaintiffs complaint, nor at any other time, either before the issuance of said bonds, nor since the issuance thereof, has there been any provision made either by the city of Huron, the municipal corporation proper, or by the board of education of the city of Huron as a department thereof, or otherwise, for an annual tax sufficient to pay the interest, and also the principal thereof, when due, or any part thereof, as required by Section 5 of Article 13 of the constitution of the State of South Dakota; and no resolution or action whatever was ever taken by any board or any authority of said city, or of the board of education, for providing for any tax for the payment of the principal or interest and coupons of the bonds mentioned and described in plaintiff's complaint

herein, nor of the indebtedness purporting to be represented thereby." Counsel for appellant concedes that, in the absence of any recital in the bonds of compliance with this constitutional provision, the foregoing averments of the answer would constitute a complete defense in an action upon the bonds, even in the hands of a *bona fide* holder, but contends that defendant is estopped by the recitals. If it was conceded below, as it is here,—and presumptively it was,—that in the absence of recitals the averments of the answer above quoted would constitute a defense, a different theory should not be adopted for the purpose of reversing the lower court. Noyes v. Brace, 9 S. D. 603, 70 N. W. 846; Graham v. Selbie, 10 S. D. 546, 74 N. W. 439. And I think the answer does state a defense, unless defendant is estopped by the recitals. As I understand the decisions from the supreme courts of Illinois and the United States cited in the majority opinion, the validity of the bonds was not involved, and they are not authority for the proposition that valid bonds may be issued, under our constitution, without any provision having been made for their payment. If this provision of our state constitution is mandatory, its effect upon the corporation is precisely the same as the corresponding provision of the Texas constitution. In both instruments the corporation is commanded to make provision, at or before incurring any indebtedness, for its payment. One command is not less imperative than the other and in neither constitution is the effect of disobedience expressly declared. To hold that valid indebtedness may be incurred in either state without complying with the constitutional requirement is to confess that it is not mandatory, because the express command of the organic law to make provision for payment at or before

the indebtedness is incurred is not complied with by permitting or requiring such provision to be made at any subsequent time. Therefore it seems to me that the limitation of power here is substantially the same as in Texas. In discussing the effect of recitals thereunder, the supreme court of that state makes use of the following forceful and logical language: "A city cannot create a debt unless the power to do so is either expressly or impliedly conferred upon it by law. If the law prohibits the creation of a debt for any purpose, then no attempt to create one would have any force. If the law permits the creation of debts for specified purposes only, an attempt to create one for a purpose not specified would be without validity. If the law authorizes the creation of debt for a specified purpose, but limits the amount and prescribes the manner of creating such debt, any attempt to create one greater than the amount specified, or without substantially observing the regulations prescribed, would be equually without force. When the law makes the existence of the power to issue bonds depend upon the existence of a given state of facts, which depend for proof of their existence upon parol evidence, and appoints a tribunal to ascertain the facts, and to create the debt and issue negotiable bonds if it finds that the required facts exist, and the bonds are issued, and contain recitals that the facts existed, that conferred authority to issue them, and such negotiable bonds go into the hands of *bona fide* holders, they are collectible, notwithstanding the nonexistence of the facts required to confer the authority to issue them. In such cases the validity of the bonds does not exist in disregard or violation of the law, but because the ascertainment of the facts that confer the power has been delegated to the body that issues them, and its

ascertainment of the facts is held to be conclusive in favor of the innocent holders of the negotiable securities, against which no evidence will be heard. But when the authority to create a debt at all, or beyond a given amount, is made to depend upon evidence furnished by official records, the same rule with regard to recitals contained in bonds given for the debts should not be applied. Every holder of such bonds is charged with knowledge of all provisions of law relating to their issuance, and if the law points to records as evidence of the existence of the facts required to authorize their issuance, or to limit the amount of the debt that the city may create, such records, and not the recitals in the bonds, must be looked to by everybody who proposes to deal in the bonds. While our constitution authorizes the creation of a debt and the issuance of its negotiable bonds by the defendant city to provide for constructing waterworks, its mandate is imperative that no such debt shall be created without making provision at the time of its creation to assess and collect annually a sufficient sum to pay the interest thereon, and create a sinking fund of at least 2 per cent. on the principal. Until that is done, the debt is not created, and none exists. If not forbidden by any other provision of the constitution, the levy may provide for the collection of a greater sum than the interest contracted for, and 2 per cent. additional, but it cannot be less than that. The language is plain and unambiguous, and in relation to cities the command is twice given. The provision must be sufficient when made. If subsequently it becomes more or less than sufficient, the validity of the obligation would not be affected. The command of the constitution that no debt shall be created without· at the same time providing for the levy and collection of a tax for its pay-

ment was evidently designed not more to insure the payment of honest debts, than to admonish the people, whose property was being charged with them, of that fact. The other provision limiting the amount of debt that cities can charge themselves with had its foundation in a wise public policy These constitutional restrictions were made for observance, not evasion. A disregard of them by the attempted creation of unlawful debts, either on account of the purpose or the amount, may lead to serious complications in the administration of the affairs of the municipal government, growing out of questions that they may give rise to, as to whether the property of delinquent taxpayers can be sold so as to confer any right upon the purchaser, when the void debt enters to any extent into the tax for which the sale is made. When the debt is void in its inception for want of authority to create it, no subsequent ratification of it by the collection of taxes or otherwise can give to it any validity; nor can there be such a thing as a *bona fide* holder of the obligations, with a right to collect them, notwithstanding the want of power in the city to create the debt." Citizens' Bank v. City of Terell, 14 S. W. 1003.

The view taken by the state court in Texas is approved by the federal court of appeals of the fifth circuit, and is, we think, sustained by the decisions of the United States supreme court. Quaker City Nat. Bank v. Nolan Co., 14 C. C. A. 157, 66 Fed. 883. In Dixon Co. v. Field, Mr. Justice MATTHEWS, speaking for the federal supreme court, says: "Recurring, then, to a consideration of the recitals in the bonds, we assume, for the purposes of this argument, that they are, in legal effect, equivalent to a representation or warranty or certificate on the part of the county officers that everything necessary by law to be

done has been done, and every fact necessary by law to have existed did exist, to make the bonds lawful and binding. Of course, this does not extend to or cover matters of law. All parties are equally bound to know the law; and a certificate reciting the actual facts, and that thereby the bonds were conformable to the law, when, judicially speaking, they are not, will not make them so, nor can it work an estoppel upon the county to claim the protection of the law. Otherwise it would always be in the power of a municipal body, to which power was denied. to usurp the forbidden authority, by declaring that its assumption was within the law. This would be the clear exercise of legislative power, and would suppose such corporate bodies to be superior to the law itself. And the estoppel does not arise except upon matters of fact which the corporate officers had authority by law to determine and to certify. It is not necessary, it is true, that the recital should enumerate each particular fact essential to the existence of the obligation. A general statement that the bonds have been issued in conformity with the law will suffice, so as to embrace every fact which the officers making the statement are authorized to determine and certify. A determination and statement as to the whole series, where more than one is involved, is a determination and certificate as to each essential particular. But it still remains that there must be authority vested in the officers by law as to each necessary fact, whether enumerated or nonenumerated, to ascertain and determine its existence, and to guaranty to those dealing with them the truth and conclusiveness of their admissions. In such a case the meaning of the law granting power to issue bonds is that they may be issued, not upon the existence of certain facts, to be ascertained and determined when-

ever disputed, but upon the ascertainment and determination of their existence by the officers or body designated by law to issue the bonds upon such a contingency. This becomes very plain when we suppose the case of such a power granted to issue bonds upon the existence of a state of facts to be ascertained and determined by some persons or tribunal other than those authorized to issue the bonds. In that case it would not be contended that a recital of the facts in the instrument itself, contrary to the finding of those charged by law with that duty, would have any legal effect. So, if the fact necessary to the existence of the authority was by law to be ascertained, not officially by the officers charged with the execution of the power, but by reference to some express and definite record of a public character, then the true meaning of the law would be that the authority to act at all depended upon the actual objective existence of the requisite fact as shown by the record, and not upon its ascertainment and determination by any one; and the consequence would necessarily follow that all persons claiming under the exercise of such a power might be put to proof of the fact, made a condition of its lawfulness, notwithstanding any recitals in the instrument. This principle is the essence of the rule declared upon this point by this court in the well considered words of Mr. Justice STRONG in Town of Coloma v. Eaves, 92 U. S. 484, 23 L. Ed. 579, where he states (page 491, 92 U. S., and page 582, 23 L. Ed.) that it is 'where it may be gathered from the legislative enactment that the officers of the municipality were invested with the power to decide whether the condition precedent has been complied with' that 'their recital that it has been made in the bonds issued by them, and held by a *bona fide* purchaser, is conclusive of the fact, and

binding upon the municipality; for the recital is itself a decision of the fact by the appointed tribunal.' The converse is embraced in the proposition, and is equally true. If the officers authorized to issue bonds upon a condition are not the appointed tribunal to decide the fact which constitutes the condition, their recital will not be accepted as a substitute for proof. In other words, where the validity of the bonds depends upon an estoppel claimed to arise upon the recitals of the instrument, the question being as to the existence of power to issue them, it is necessary to establish that the officers executing the bonds had lawful authority to make the recitals, and to make them conclusive. The very ground of the estoppel is that the recitals are the official statements of those to whom the law refers the public for authentic and final information upon the subject. This is the rule which has been constantly applied by this court in the numerous cases in which it has been involved. The differences in the result of the judgments have depended upon the question whether, in the particular case under consideration, a fair construction of the law authorized the officers issuing the bonds to ascertain, determine, and certify the existence of the facts upon which their power, by the terms of the law, was made to depend,—not including, of course, that class of cases in which the controversy related, not to conditions precedent on which the right to act at all depended, but upon conditions affecting only the mode of exercising a power admitted to have come into being. Marcy v. Oswego Tp., 92 U. S. 637, 23 L. Ed. 748; Commissioners v. Bolles, 94 U. S. 104, 24 L. Ed. 46; Commissioners v. Clark, 94 U. S. 278, 24 L. Ed. 59; Warren Co. v. Marcy, 97 U. S. 96, 24 L. Ed. 977; Pana v. Bowler, 107 U. S. 529 2 Sup. Ct. 704, 27 L. Ed. 424. In the

present case there was no power at all conferred to issue bonds in excess of an amount equal to ten per cent. upon the assessed valuation of the taxable property in the county. In determining the limit of power, there were necessarily two factors,—the amount of the bonds to be issued, and the amount of the assessed value of the property for purposes of taxation. The amount of the bonds issued was known. It is stated in the recital itself. It was $87,000. The holder of each bond was apprised of that fact. The amount of the assessed value of the taxable property in the county is not stated; but *ex vi termini*, it was ascertainable in one way only, and that was by reference to the assessment itself,—a public record equally accessible to all intending purchasers of bonds as well as to the county officers. This being known, the ratio between the two amounts was fixed by an arithmetical calculation. No recital involving the amount of the assessed taxable valuation of the property to be taxed for the payment of the bonds can take the place of the assessment itself, for it is the amount, as fixed by reference to that record, that is made by the constitution the standard for measuring the limit of the municipal power. Nothing in the way of inquiry, ascertainment, or determination as to that fact is submitted to the county officers. They are bound, it is true, to learn from the assessment what the limit upon their authority is, as a necessary preliminary in the exercise of their functions and the performance of their duty; but the information is for themselves alone. All the world besides must have it from the same source, and for themselves. The fact as it is recorded in the assessment itself is extrinsic, and proves itself by inspection, and concludes all determinations that contradict it." 111 U. S. 83 4 Sup. Ct. 315, 28 L. Ed. 360. Much of the foregoing

language is quoted with approval in Lake Co. v. Graham, 130 U. S. 674, 9 Sup. Ct. 654 32 L. Ed. 1065. The federal court of appeals in the eighth circuit employs this language, citing numerous authorities in support of its position: ''It has frequently been held that municipalities will not be estopped by recitals contained in bonds, unless the recitals relate to matters of fact which it may fairly be presumed that the officers of the municipality were left to determine. And the later decisions on this subject distinctly announce that recitals cannot be relied upon as an estoppel where the facts recited are matters of public record, and are open to the inspection of every one disposed to make inquiries." Coffin v. Board, 6 C. C. A. 288, 57 Fed. 137. The same court having occasion to pass upon the validity of the series of bonds involved in this action, held the defendant was estopped by their recitals from proving that the board of education did not, at or before the time of issuing or selling them, provide for the collection of an annual tax to pay the interest and principal thereof when due. After citing authorities and discussing this branch of the case at length, that learned court concludes as follows: ''In view of the rule these authorities establish and illustrate, there is no longer any difficulty in disposing of the question we have been considering. Full power to perform the condition precedent that was not fulfilled in the case before us, and to make a lawful issue of the bonds, was vested in this board of education. The constitution and statute intrusted to this board the power, and imposed upon it the duty, to ascertain and determine, before it issued the bonds, whether or not this condition had been performed. Neither the statute nor the constitution referred the purchaser to or required any public record of the performance

of this condition before or at the time of the issue of the bonds, other than the act of the board in issuing them. The board not only had special means of knowledge regarding the performance of this condition, but it had absolute knowledge; for the board alone could perform the condition, and the purchaser had a right to assume that it knew and truthfully certified to what it had itself done. This board, by the act of issuing the bonds, decided that this and all other conditions precedent to their issue had been performed. It certified that fact on the face of the bonds it issued, and *bona fide* purchasers have bought them. The defendant corporation cannot now be heard to deny the truth of this certificate, to their prejudice. The case falls far within the rule adopted by the supreme court. That rule commends itself to our judgment as just and equitable, and the long line of decisions in that court affirming it has foreclosed all discussion of the rule itself in the national courts." 10 C. C. A. 637, 62 Fed. 778.

The principles upon which this controversy must be determined are stated with peculiar clearness and felicity in the foregoing quotation. The federal court says: "The constitution and statute intrusted to this board the power, and imposed upon it the duty, to ascertain and determine, before it issued the bonds, whether or not this condition had been performed. Neither the statute nor the constitution referred the purchaser to or required any public record of the performance of this condition, before or at the time of the issue of the bonds, other than the act of the board in issuing them." If these assertions are well founded, the conclusion of the national court is certainly correct. But, with all due deference to the distinguished jurists who rendered the opinion, I am

disposed to adopt a different view. Recurring to the constitution, it will be observed that instrument did require something more than the act of issuing the bonds. It required the defendent corporation to provide, at or before the time of issuing the bonds, for the collection of an annual tax sufficient to pay the interest and also the principal thereof, when due. This clearly required the making of a public record. It was the duty of the clerk of the board to keep an accurate journal of its proceedings. Comp. Laws, § 1820. The board could not provide for an annual tax without recording its action in the journal of its proceedings, and thus making a public record, open to the inspection of every one disposed to make inquiries. Whether or not such public record existed when these bonds were issued is not a fact dependent upon the ascertainment or determination of defendant's officers. It was a fact necessary to the existence of the authority to issue any bonds, and that authority depended upon the actual objective existence of the requisite fact—the existence of the record itself. Every purchaser of these bonds is bound to know the extent of power possessed by the corporation issuing them. He is bound to know that the defendant was without authority to issue any bonds until a public record existed, providing for the collection of an annual tax to pay them. There is no greater hardship in requiring him to ascertain whether such record existed, than to require a purchaser of bonds to ascertain the amount of taxable property of a municipality as shown by its assessment rolls. In principle, there is no distinction between the two classes of cases. Upon principle and authority, I think the recitals in these bonds do not estop defendant from proving its alleged defense as to provision not having been made

12 S. D.—36

for the collection of an annual tax, and that plaintiff's demurrer was properly overruled. The effect of holding otherwise would be to practically annul one of the plain provisions of the state constitution. The judgment below should be affirmed.