SCHULL CONST. CO., Respondent v. WEBSTER IND. SCHOOL
DIST. NO. 101, Respondent and GULBRAA, Appellant

(198 N.W.2d 512)

(File No. 11091. Opinion filed June 2, 1972)

Order denying petition for rehearing 7-5-72

**John L. Foley,** Watertown, for appellant.

**Austin, Hinderaker & Hackett,** Watertown, for plaintiff and respondent.

**Holland, Delaney & Vander Linden,** Webster, for defendant and respondent.

**Ross H. Oviatt,** Watertown, amici curiae.

PER CURIAM.

Action for declaratory judgment to determine the validity of a contract for the construction of a school building.

The circuit court held that contract valid and the intervenor appeals.

The voters of defendant, Webster Independent School District, proceeding under SDCL 13-19 have four times since May 14, 1968 rejected the issuance of bonds to finance the construction of the building. At each election the issuance of bonds received more than fifty percent of the vote but failed to receive the sixty percent required by SDCL 13-19-16.

That the Webster School District is in need of an additional elementary school building is not in dispute. The district is currently renting rooms in churches, the city hall and various buildings in the Webster community.

The bond issues previously voted upon were substantially greater than the amount here involved of $447,800. However, instead of submitting this figure to the voters the school board attempted to proceed under the provision of SDCL 13-16-6, 1972 pocket supplement, which provides as follows:

"13-16-6. **Definition and purposes of capital outlay fund — Use for general fund purposes.** — The capital outlay fund of the school district is a fund provided by law to meet all expenditures which except as hereinafter provided, result in the acquisition of fixed assets or additions to fixed assets. It is, in so far as it relates to fixed assets and notwithstanding the other provisions of this section, an expenditure for land or existing buildings purchased by the district, improvement of grounds, construction of buildings, additions to buildings, remodeling of buildings, or initial or additional equipment. It may also be used for installment or lease payments on property which has a contracted terminal date and will result in the acquisition of property. Additionally, it may be used for general fund purposes to the extent provided in § 13-16-7 in a school district which is levying at the maximum levy and in which it is not needed for purposes of fixed assets."

During the month of November, 1971 the defendant school district published a request for bids which read in part as follows:

"ADVERTISEMENT FOR BIDS
WEBSTER ELEMENTARY SCHOOL
PHASE II
INDEPENDENT SCHOOL DISTRICT
NO. 101
WEBSTER, SOUTH DAKOTA

REQUEST FOR BIDS: Sealed proposals for the installment purchase of the Webster Elementary School, Phase II, Independent School District No. 101, Webster, South Dakota, will be received by the Business Manager".

The words "installment purchase" in the notice for bids has reference to the fact that the plans, specification and bid forms required the bidder to state the rate of interest and the installment payment schedule that would have to be made by the school district in fulfillment of the contract.

Plaintiff construction company submitted the only bid in the amount of $447,800 along with a schedule of payments over a period of nine years, $44,780 to be paid when the building was accepted and a like amount annually at six percent interest.

This bid was accepted by the defendant and on December 10, 1971 two contracts were entered into by the plaintiff and defendant. The first of these was an ordinary construction contract. The second was an agreement whereby the school district granted the contractor until the contract had been fully performed, "the right to construct upon the premises above described a school building in accordance with the plans and specifications." This contract also outlined costs for the construction of $447,800 and further states "with the purchase price to be paid $44,780.00, at the effective date of the purchase, which shall be the date of the acceptance of the building as being fully completed, and the balance to be paid in nine equal annual installments of $44,780.00

each due on the same date in each subsequent year", the annual installments to bear interest at the rate of six percent per annum payable on the same date the principal was due and payable. This contract also contained a provision:

"(3) Both legal and equitable title to said building shall be vested in the school district from the date it accepts the building under the terms of the separate building contract."

■ ■ 1. The first question presented by this appeal is whether the proposal for the "installment purchase" and the conditions set out in the plans and specifications as to financing the building are in compliance with SDCL 13-20-3 which requires competitive bidding on construction contracts. This notice is jurisdictional. The notice for bids as advertised, and the plans, specifications and bid forms not only required a bid for the construction of the building but also requires that the bidder finance the project.

This court said in Seim v. Ind. Dist. of Monroe, 70 S.D. 315, 17 N.W.2d 342:

"It is well settled that when by statute the mode and manner in which contracts of a school district or other local subdivision may be entered into is limited and any other manner of entering into a contract or obligation is expressly or impliedly forbidden a contract not made in compliance therewith is invalid and cannot ordinarily be ratified".

The court then adopted as the law in this state the rule governing competitive bidding as stated in 3 McQuillin on Municipal Corporations, 2d Ed., § 1287 (now found at 10 McQuillin on Municipal Corporations, Sec. 29.30, 1966 revised edition) as follows:

" 'The requirement of competitive bidding and the letting of municipal contracts is uniformly construed as mandatory and jurisdictional and nonobservance will render the contract void and unenforcible.' "

In 10 McQuillin Municipal Corporations, § 29.44, 1966 revised edition, the following appears:

"The request for bids must not unduly restrict competition. The dictates of public policy require that all responsible bidders shall have the opportunity to compete, and accordingly devices or unreasonable actions by authorities which are designed or tend to limit the list of qualified bidders are presumed to be injurious to the taxpayer and are illegal."

There is nothing in SDCL 13-20-3 and 5-18-3 that authorizes a school district to include in the advertisement for bids or in the plans or specifications any reference to the financing of the structure. A classic definition of "plans and specifications" is found in Judge Maxwell's dissent in the case of State ex rel. Silver v. Kendall, 15 Neb. 262, 18 N.W. 85, 90, wherein he stated as follows:

"The phrase 'plans and specifications' has a well defined meaning, in this state at least. A plan, when applied to a building, in an architectural drawing representing the horizontal sections of the various floors or stories of the building, the disposition of apartments and walls, with the situation of the doors, windows, — in fact, represents the different stories as they are to be built, and the whole as it will appear when completed. The word 'specification,' when applied to a building, means a specific and detailed statement of the materials to be used in the building, and the manner of performing the work. Any matter that does not relate to either of these is not included in the phrase 'plans and specifications.' "

■ 2. By the terms of the second agreement with the contractor, the school district authorized plaintiff to construct the building on school district property. The real estate was the property of the district at all times. As the material would be processed into a building and affixed to the soil, it likewise would become part of the real estate and property of the district. Upon

completion and approval of the building the district could not purchase something it already owned. Consequently the contemplated installment payments to the contractor would not be for the purchase of the building but payments on the debt owed the contractor providing the contracts in the first instance were legal. If illegal, no payments could be made. See Norbeck & Nicholson Co. v. State, 32 S.D. 189, 142 N.W. 847.

Payment and purchase are not synonymous terms, Ford v. Ball, 76 W.Va. 663, 86 S.E. 562.

In re Bitker's Estate, 251 Wis. 538, 30 N.W.2d 449, the court held, "There is a clear distinction between payment and purchase. Payment extinguishes and discharges an indebtedness; purchase transfers title thereto to the payor or his nominee."

■ ■ 3. We construe the next to the last sentence of SDCL 13-16-6, supra, where it is stated, "will result in the acquisition of property", to authorize installment payments out of the capital outlay fund for purchases, otherwise permitted by law, only in advance of acquisition of title to the property purchased. For illustration, the purchase of a school bus on a conditional sales contract, the purchase of land, teacherages or buildings, by contract for deed or lease purchase agreement. This sentence stands by itself in the statute, it does not authorize a different method of payment for "construction of buildings" and applies only to those purchases above described. It was never intended to deprive the electors of the opportunity to express their opinion for or against construction of buildings by being given the opportunity to vote at a bond election which requires a 60% favorable vote.

Such contracts or leases are, however, dependent on the provision of SDCL 13-16-7, which provides:

"The school board of any school district of the state may at its discretion authorize an annual levy of a tax not to exceed five mills on the assessed valuation of the district for the capital outlay fund. Such levy shall be exclusive of the maximum levies provided for other school district funds."

■■ This section makes it mandatory that all installment and lease payments be made out of the current annual levy authorized by the school board for that purpose. If a contract or lease covers more than one year it should contain a clause to the effect that continuation of the contract or lease is dependent on the annual levy to be made by the school board in office at the later date as SDCL 13-16-7 does not authorize a levy for the capital outlay fund for more than one year. This discretionary levy cannot be converted by a school board into an irrepealable levy to bind future boards in an effort to comply with Article XIII, Section 5 of the State Constitution.

■ 4. SDCL 5-18 "Public contracts awarded on competitive bids" is in pari materia and consistent with SDCL 13-20, "Purchases and contracts" by school districts. These two chapters must be considered together in matters relating to construction contracts and SDCL 5-18 specifically includes public school corporations in SDCL 5-18-1, "Definition of terms".

SDCL 5-18-14 provides for partial payments to the contractor as work on a construction contract progresses and concludes,

" * * * Final payment of all sums due to the contractor shall be made within 30 days after the completion and acceptance of the public improvement by the public corporation."

■ This requirement leaves only two methods of financing construction: first, payment in full out of funds in the capital outlay fund; second, issuance of bonds pursuant to SDCL 13-19.

The contracts are void.

Reversed.

HANSON, P. J., and DOYLE, J., concur.

BIEGELMEIER and WINANS, JJ., concur in result.

WOLLMAN, J., concurs specially.

WOLLMAN, Judge (concurring specially).

I accept respondents' argument that the wisdom of the capital outlay fund statute, SDCL 13-16-6, is not for the court to pass on. However, when the legislature has at an earlier time enacted very complete and carefully detailed statutes governing the manner in which school districts may legally incur indebtedness for the purpose of erecting school buildings, including the specific requirements that three-fifths of all ballots cast on the question must be in favor of incurring the indebtedness, SDCL 13-19-16, and that an irrepealable levy of taxes be made for the payment of interest and principal before the issuing of any bonds, SDCL 13-16-10, and later enacts a capital outlay fund statute which in essence provides only for a discretionary annual levy of not to exceed five mills without any provision for the payment of interest and without any provision for the mandatory levy of an irrepealable tax to repay the indebtedness incurred, I believe we do no violence to legislative authority when we decline to hold that the capital outlay fund statute is in effect co-extensive with an alternative to the statutes authorizing school districts to incur and refund bonded indebtedness.

Why, one asks, did not the legislature provide for the counterpart of SDCL 13-16-10, an irrepealable annual levy to repay the indebtedness and interest, when it enacted and later amended the capital outlay fund statute? Respondents argue that there are many things that the legislature overlooks and that by virtue of Art. XIII, § 5 of our Constitution, which was interpreted by this court to be self-executing in the case of Wilson v. Board of Education, 12 S.D. 535, 81 N.W. 952, such a statute is superfluous. Superflous or not, the legislature has seen fit to enact such a statute with respect to the payment of interest and principal on bonded indebtedness. It is interesting to note that the source of the capital outlay fund statute in its present form is found in Ch. 41, Ch. 10, § 3, Laws of 1955. Section 4 of that chapter amends SDCL 13-16-10. No mention is made of any irrepealable levy to repay indebtedness created under the capital outlay fund statute. I believe that it is reasonable to conclude that the legislature did not provide for a counterpart of SDCL 13-16-10 with regard to the capital outlay

fund statute because the legislature never intended that the statute be used as an alternative means of creating what in effect is a bonded indebtedness for the construction of school buildings. I think the same argument holds true with respect to the lack of any statute specifically authorizing the payment of interest on indebtedness incurred under the capital outlay fund statute.

SDCL 13-16-7 provides that a school board " \* \* \* may at its discretion authorize an annual levy of a tax not to exceed five mills on the assessed valuation of the district for the capital outlay fund." If South Dakota Constitution, Art. XIII, § 5 is self-executing with respect to the repayment of indebtedness created under the capital outlay fund statute, and if SDCL 13-16-7 is an absolute limitation on the maximum amount that can be levied to repay the indebtedness, what result obtains in a situation where the five mill annual tax is not sufficient to raise the funds needed to meet the obligations of the school district under the installment purchase contract in the event of a disastrous reduction in the assessed valuation of the school district? The possibility of such an occurrence, however improbable it may be, further convinces me that the legislature did not intend that the capital outlay fund statute be used in a manner that creates indebtedness similar in all respects but name to bonded indebtedness incurred under the provisions of SDCL 13-19.